MOORE *v.* SAGINAW, TUSCOLA & HURON RAILROAD CO.[1]

1. CARRIERS—PASSENGER ON FREIGHT TRAIN.
   One who takes passage on a freight train cannot insist upon the same equipment as is usual upon regular passenger trains. He will be presumed to understand that different cars, couplings, and brakes are used, and that cars must be coupled and shifted in the course of yard work at the various stations; that jars and jolts are incident to the ordinary management, and necessarily affect the equilibrium of persons standing in the car.[2]

2. SAME—CONCUSSIONS—ASSUMPTION OF RISK—JUDICIAL NOTICE.
   The court will take judicial notice of the fact that it is difficult, if not impossible, to handle freight trains of varying length upon roads of varying grade without concussions; and passengers must be expected to recognize the difficulty, and to assume the risks incident to the methods of the business, where the crew handles the train with the highest degree of care which good railroading requires and permits under the circumstances.

3. SAME—LIABILITY FOR NEGLIGENCE.
   But, if a less degree of care is bestowed upon the management of the train, it is negligence; and, if a passenger is injured thereby, without being in fault himself, the company is liable.

---

[1] Rehearing denied January 25, 1898.

[2] On the question what risk is assumed by a passenger on a freight train, there is a collection of the authorities in a note to *Ohio Valley R. Co.* v. *Watson's Adm'r,* (Ky.) 19 L. R. A. 310.

115   103
s119  614

115   103
f124  422

115   103
s72NW1112
131   1465
d131  1546

4. SAME—EVIDENCE—QUESTION FOR JURY.
   The testimony of the crew of a freight train that the shunting of cars, whereby plaintiff, a passenger upon the way-car, was injured, was done with the highest degree of care consistent with the practical handling of the train, is not necessarily conclusive that such care was in fact exercised.

5. SAME—WITNESSES—COMPETENCY—FOUNDATION FOR TESTIMONY.
   Evidence that the plaintiff had been a passenger on freight trains many times, and had frequently seen them "come together," established his competency to testify that the shock on the occasion of the injury was the hardest he had ever experienced from coupling cars, although it did not specifically appear that he had been on such trains when couplings were being made.

6. SAME — INJURY TO PASSENGER — CONTRIBUTORY NEGLIGENCE — WHEN A MATTER OF LAW.
   The court is not justified in holding a passenger on a freight train guilty, as a matter of law, of negligence contributing to injuries received by him from the shunting of cars against the one in which he was riding, on the ground that he failed to guard against the danger, unless it clearly appears that he did not take the precautions usually exercised by ordinarily prudent men under the same circumstances.

7. SAME—MISLEADING INSTRUCTIONS.
   An instruction in an action for injuries to a passenger on a freight train, that, if plaintiff was lawfully on the cars, defendant was bound to carry him safely and that its responsibility for the safety of its passengers does not depend on the kind of cars in which they are carried, is misleading, as giving the jury to understand that the company is an insurer of the safety of its passengers, and that the same degree of protection is requisite on a freight train as on a passenger train.

Error to Tuscola; Beach, J.   Submitted November 6, 1897.   Decided November 23, 1897.

Case by James H. Moore against the Saginaw, Tuscola & Huron Railroad Company for personal injuries.   From a judgment for plaintiff, defendant brings error.   Reversed.

*L. T. Durand*, for appellant.

*Sparling, Law & Moore* (*H. W. Stevens*, of counsel), for appellee.

HOOKER, J.  The plaintiff entered the way-car of the defendant, which, with three or four car loads of stone to which it was attached, stood in the defendant's yard, at a station called "Reese," while the train crew was, to his knowledge, engaged in shifting cars, by shunting.  As he came to a seat near the end of the car, he set his baggage down, and was in the act of sitting down, when one or more cars struck and were coupled to the forward stone car, the force of the blow being imparted to the way-car, through the car of stone, which did not move perceptibly. The result was that the way-car sprang back the length of the coupling link, and as quickly returned.  The plaintiff and three other passengers were thrown down, and the plaintiff's ribs were broken and other injuries inflicted.  The defendant has appealed from a judgment of $3,000, and contends:

1. That the declaration fails to state a cause of action.
2. That the defendant was innocent of negligence, as a matter of law.
3. That the plaintiff's injury was caused by contributory negligence.

It appears that the defendant invited passengers to ride upon this train, but it is insisted that it was not thereby deprived of the right to pursue the usual methods of shifting cars, in doing the train work at the various stations, that those who run freight trains uniformly adopt, which is for the freight engine to push the cars, leaving them to be managed and coupled by the crew, without requiring the engine to remain attached until the coupling is made, which it is said would be productive of great delay.  The evidence justifies the statement that the public was invited to take passage upon this train, which appears to have been what is commonly known as an "accommodation train;" and we cannot say that it was conclusively shown

that the train was not ready for the reception of passengers. The train was not made up at Reese, which was a way station; and it is not clear that passengers were not expected to take the train in the yard, or that it was customary for the crew to stop the train at the station for passengers before leaving.

One who takes passage upon such a train, where• the object and principal business is the transportation of freight, cannot insist upon the same equipment as is usual upon regular passenger trains. He will be presumed to understand that different cars and couplings and brakes are used, and that cars must be coupled and uncoupled and shifted in the course of yard work at the various stations; that jars and jolts and jerks and concussions are incident to the ordinary management; and that these necessarily affect the equilibrium of persons standing in 'the car. We may take judicial notice that it is difficult, if not impossible, to handle trains of varying length and weight upon roads of varying grade without concussions; and passengers must be expected to know this, and assume the risks incident to such methods, where the crew handles the train with the highest degree of care which good railroading requires and permits under the circumstances. But, if a less degree of care is bestowed upon the management of the train, it is negligence; and, if a passenger is injured thereby, without being in fault himself, the company is liable. The following quotation from Elliott on Railroads (section 1582) supports this view:

"A railroad company may, of course, carry passengers on its freight trains, and, when it does, it assumes, to a *somewhat limited* extent, the liability of a carrier of passengers; but all persons take the risk incident to the mode of travel they adopt, *not, however, risks from negligence;* and one who travels on a freight train assumes the risks incident to that mode of travel, as, for example, risks of injury from jerks or jolts incident to the movement of freight trains."

In the case of *Louisville, etc., R. Co.* v. *Bisch*, 120 Ind. 549, Elliott, C. J., said:

"There is, it is our duty to say, a difference between freight trains and regular passenger trains. Passengers assume the risks incident to the means of transportation they adopt; and one who takes passage on a freight train, although it has a caboose attached for the transportation of passengers, must take notice of the character of the train, and use such ordinary care to avoid injury as the nature of the mode of transportation renders prudent. One of the risks which ordinary prudence requires a passenger on the caboose of a freight train to guard against is that arising from the sudden jerk of the train on starting, resulting from the taking up of the slack between the cars." See authorities cited.

But, while the passenger must accept the inconvenience and dangers necessarily incident to the mode of travel which he adopts, the company carrying passengers on its freight trains must use all care and caution practicable with the conduct of its business. In the case of *New York, etc., R. Co.* v. *Doane*, 115 Ind. 435 (7 Am. St. Rep. 451), it is said by Niblack, C. J.:

"It is neither expected nor required that a passenger on a freight train shall be provided with all the comforts and conveniences which are usually afforded passengers on a regular passenger train; but there is on that account no diminution in the obligation of those in charge of the freight train to carry its passengers with becoming and all necessary care.  *  *  *  It is the duty of a railroad company engaged in the transportation of passengers, whether by freight or passenger trains, to so run and manage its trains, and to so handle its passengers that no one shall be injured *by its own negligence.*"

In *Chicago, etc., R. Co.* v. *Arnol*, 144 Ill. 261, it is said:

"But, if a railway company consents to carry passengers for hire by such trains [*i. e.*, freight trains], the general rule of its responsibility for their safe carriage is not otherwise relaxed. From the composition of such a train and the appliances necessarily used in its efficient operation, there cannot, in the nature of things, be the same immunity from peril in traveling by freight train as there is by passenger train, but the same degree of care can be exercised in the operation of each. The result in

respect of the safety of the passenger may be wholly different, because of the inherent hazards incident to the operation of one train, and not to the other; and it is this hazard the passenger assumes in taking a freight train, and not hazard or peril arising from the negligence or want of proper care of those in charge of it. Ordinarily, carriers of passengers for hire, while not insurers of absolutely safe carriage, are held to the exercise of the highest degree of care, skill, and diligence practically consistent with the efficient use and operation of the mode of transportation adopted."

See, also, Hutch. Carr. (2d Ed.) § 538a.

Counsel insists that, if the railroad is managed according to the common custom, it is sufficient; but if this be conceded, and we say that shunting cars, though against the express rules of the company, is not negligence *per se*, because usually practiced on all good roads, it is still a question whether or not it was done in this case with the highest degree of care consistent with the practical handling of the train; and we cannot accede to the proposition that it was, because the crew so considered it. We cannot determine the question, inasmuch as the circumstances were before the jury. 4 Elliott, Railroads, § 1583. We are of the opinion that it was proper to leave the question of negligence to the jury, and deny the motion for a new trial based upon the alleged want of evidence of negligence.

In the same connection, we may add that the statement of the witness that it was the hardest shock he had ever experienced from coupling cars was not inadmissible. He had been in freight cars many times, and frequently saw them come together, and we are not impressed with the force of the suggestion that although "he had ridden on freight trains before, probably a couple of hundred times, * * * he nowhere stated that he had been on such freight trains when couplings were made, and it therefore afforded no basis for comparison." It is said that this did not tend to prove that the shock was an unusual one. If this is so, the evidence could hardly be injurious; but we

think that, in the light of his acquaintance with freight trains, it was evidence that the shock was greater than likely to occur in the course of many trips on freight trains. If so, it was competent. *Missouri Pac. R. Co.* v. *Marten*, 22 Am. & Eng. R. Cas. 409, 2 Tex. App. (Civ. Cas.) 571.

While we think the question of negligence was for the jury, we may take judicial notice that concussion is the necessary result of the coupling of freight cars by the use of link and pin, and that it is usually sufficient to destroy the equilibrium of a person standing. These are facts of common knowledge. If it is true, as a matter of law, that one of the risks that a passenger upon a freight train must guard against is the danger arising from the usual jerks occasioned by the taking up of the slack between cars, it is difficult to find a reason for saying that the rule does not apply to the danger arising from the concussion which is usual when freight cars are coupled; and it would follow that a failure to guard against either would be the neglect of a duty, and would be contributory negligence if it contributed to the injury; and we see no less reason for saying that a passenger should not use such reasonable precaution, while entering a car, against a danger which he is bound to anticipate, as he would be required to do after getting seated. What a passenger should do to guard against such danger as he has reason to apprehend from the coupling of cars must depend upon the circumstances, and what an ordinarily careful and prudent person would do under such circumstances. Must the passenger keep out of the car until the danger is over, or keep his seat all of the time that he is in the car, and, if he does not, is he to be chargeable with contributory negligence, notwithstanding his familiarity with railway travel, and precautions taken, such as care in walking, and watching for the approach of the engine or other cars, taking hold of seats or stationary portions of the car, etc.? He is not to be held guilty of contributory negligence if he takes the usual precautions of careful

persons to avoid such consequences as may be reasonably apprehended. This can never be determined by a court unless the conduct alleged to be negligent is clearly so; and while, abstractly speaking, this may be said to be a matter of opinion, yet, where negligence is clear, the courts take the question from the jury; but it is commonly understood that courts do not assume to invade the province of a jury, and determine such questions, unless it seems apparent that the general concensus of honest opinion should or does recognize the act as one that cannot be reconciled with the idea of the exercise of that caution known to be usually exercised by ordinarily prudent men. We are unable to say that in this case; hence the conclusion that the question of contributory negligence was for the jury.

At the request of the plaintiff's counsel, the court instructed the jury as follows:

"*Sixth.* When a railroad company admits passengers into a way-car attached to a freight train, for the purpose of carrying passengers to be transported as passengers, and takes the customary fare for the same, it incurs the same liability for the safety of passengers as though they were in regular passenger coaches at the time of the occurrence of the injury. The responsibility of the railroad company for the safety of its passengers does not depend on the kind of cars in which they are carried. If the passenger is lawfully on the cars, the company is bound to carry him safely.

"*Seventh.* The plaintiff is not guilty of contributory negligence for the reason that he did not sit down in the first seat he came to when he entered the car in question. He had a right to take any seat he chose, in any part of the car that the defendant company had provided for its passengers.

"*Eighth.* The plaintiff is not guilty of contributory negligence for the reason that, after entering the way-car, he did not look and listen for any danger. It is not contributory negligence not to look for danger where there is no reason to apprehend any. Every one has a right to presume that others, owing a special duty to guard against danger, will perform that duty."

It is our understanding that a common carrier of passengers is not an insurer of safety, but that he is only liable when negligence is shown. This is the plaintiff's own theory, as shown by the action brought. See Hutch. Carr. (2d Ed.) § 497; *Grand Rapids, etc., R. Co.* v. *Huntley*, 38 Mich. 537 (31 Am. Rep. 321); *Michigan Cent. R. Co.* v. *Coleman*, 28 Mich. 440; *Mitchell* v. *Railway Co.*, 51 Mich. 236 (47 Am. Rep. 566). The propositions that, if the passenger is lawfully on the cars, the company is bound to carry him safely, and that "the responsibility of the company for the safety of its passengers does not depend on the kind of cars in which they are carried," are broad, and, in our judgment, would lead the average juror to understand that the railroad company was an insurer of the safety of the passengers, and that the same degree of protection is requisite upon a freight train as upon the best-equipped passenger train. The recent case of *Hall* v. *Murdock*, 114 Mich. 233, shows that the same is not required. We think also that the seventh and eighth requests should not have been given, as they take from the jury the question of the degree of caution required of the plaintiff.

We think the declaration was sufficient, under our decisions.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.