BERGQUIST-WALKER REAL ESTATE, INC., Plaintiff and Appellant,

v.

WILLIAM CLAIRMONT, INC., and William Clairmont, Defendants and Appellees.

Civ. No. 10236.

Supreme Court of North Dakota.

April 14, 1983.

Daniel J. Chapman, of Chapman & Chapman, Bismarck, for plaintiff and appellant.

Patrick A. Conmy (argued), of Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, and Richard P. Rausch, of Rausch & Rausch, Bismarck, for defendants and appellees.

VANDE WALLE, Justice.

Bergquist-Walker Real Estate, Inc. (hereinafter "Walker"), appealed from a judgment dismissing its action against William Clairmont, Inc. (hereinafter "Clairmont"), or, in the alternative, granting Clairmont a new trial, entered upon an order for judgment notwithstanding a jury verdict. We affirm in part and reverse in part and remand for further proceedings.

Walker alleged that he had an oral contract with Clairmont for the exclusive right to sell lands purchased by Clairmont from Jim and Marie Tyler (hereinafter "Tyler Ranch"). Clairmont denied Walker the right to attempt to sell the property. The action was tried to a six-person jury which returned a verdict in favor of Walker for $500,000. Clairmont moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court granted the motion for judgment notwithstanding the verdict and, pursuant to Rule 50(c), N.D.R.Civ.P., conditionally granted the motion for a new trial if the judgment was thereafter vacated or reversed. The trial court's order and judgment limited the new trial to the issue of damages upon a quantum meruit basis. Walker appealed from the order and judgment.

Before we consider the issues raised by Walker, we briefly review the functions of this court on appeal from a judgment notwithstanding the verdict. Recently, in *Okken v. Okken,* 325 N.W.2d 264, 267 (N.D. 1982), we stated:

"In determining if the evidence is sufficient to create an issue of fact, and hence in determining if judgment n.o.v. should be granted, the trial court must employ a rigorous standard with a view toward preserving verdicts. [Citation omitted.] The test is whether or not the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but *one* conclusion as to the verdict about which there can be no reasonable difference of opinion. [Citation omitted.] In employing this standard, the trial judge is not free to consider the weight of the evidence or to judge the credibility of witnesses; on the contrary, he is required to accept the truth of the evidence presented by the party opposing the motion and the truth of all reasonable inferences from that evidence which support the jury verdict. [Citations omitted.] The trial court must give proper deference to the jury's evaluation of the evidence and its judgment of the credibility of witnesses under a motion for judgment n.o.v.

"In order to determine whether or not the trial court erred in granting ... motion for judgment n.o.v., we must exam-

ine the trial record and then apply the same standard that the trial court was required to apply initially." [Emphasis in original.]

In its order granting judgment n.o.v., the trial court stated:

"The Court finds the facts in their most favorable light to the plaintiff for the establishment of a contract to be:

"1. That an oral contract was an agreement between Walker and Clairmont that Walker would sell all of the Clairmont properties owned by him at the date of the agreement together with all thereafter acquired property.

"2. That as each purported sale or group of sales came about, the oral agreement would be reduced to writing.

"3. That the agreement was to last for the lifetime of the parties.

"4. That this contract came into effect some time in the fall of 1973 at a meeting in a local steak house.

"This was the evidence given by Mr. Walker in support of his contract. All of the other parties who testified admitted they only presumed that the parties would enter into a contract for the sale of the 'Tyler properties', but none of them had any knowledge of the specifics of that property.

"5. No sales were ever made of any of the alleged properties covered by the oral agreement.

"The alleged contract is invalid by virtue of the statute of frauds of the State of North Dakota, Section 9–06–04 of the NDCC. It fails to have the following items which are required in a contract:

"1. The purported agreement exists for a period of more than one year, i.e. a lifetime.

"2. The contract fails to identify the object of the contract, i.e. the property to be sold.

"3. There is nothing which indicates the obligations of the plaintiff underneath the contract.

"There is no question in this Court's mind that the parties anticipated and hoped that they might be able to arrive at an agreement for the sale of certain property in the city by Mr. Walker on Mr. Clairmont's behalf. However, such a contract was never entered into or consummated in any fashion. Based on the foregoing, the Court hereby grants Judgment Notwithstanding the Verdict and enters Judgment for a Dismissal of the plaintiff's Complaint."

I

Walker's first challenge is that the trial court committed error by granting the motion for judgment n.o.v. based in part upon an alleged violation of the statute of frauds because the purported agreement could not be performed within one year.

Section 9–06–04, N.D.C.C., provides, in part:

"The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

"1. An agreement that by its terms is not to be performed within a year from the making thereof; . . ."

The trial court's conclusion that the contract was to last a lifetime apparently was based upon the following testimony given by Walker on cross-examination:

"Q. Now, going back again to April 9, 1974, in your understanding that this was to cover all property sold by Mr. Clairmont, did you have an end date in sight as to when this contract would no longer apply to Mr. Clairmont's property?

"A. You indicated that Mr. Clairmont sold, I would be selling all of Mr. Clairmont's property that he owned as he acquired it.

"Q. Okay, we are defining sale differently, I guess, but did you have any end date in sight? How many years were you to be the exclusive seller of Mr. Clairmont's property?

"A. Each property would be handled as far as the length of time on a separate basis.

"Q. How many years, though, would Mr. Clairmont, under your theory be obligated to market his property through you, Mr. Walker—forever?

"A. I wouldn't expect him to obligate himself to that point. I think if the property was of comparative size, I was willing to consider ten years as an adequate maximum length.

"Q. Well, assuming again, and I am just trying to understand what you say your agreement was, assuming Mr. Clairmont acquired a piece of property in 1980, would you anticipate that under your agreement you would be allowed to market it for him?

"A. Yes.

"Q. Now, I am going to get ridiculous —1990?

"A. If I was active and he was active, yes, and I was doing a good job, I would expect it, yes.

"Q. So the terms of this contract that you're describing to me and to the jury is one that was going to extend through your business lifetime?

"A. Through both of our lifetimes if I did my job."

Although this colloquy between Walker and Clairmont's counsel appears to apply to all property of Clairmont, whether presently owned or to be acquired at any time in the future, thus indicating that the contract would not be performed within one year, there is other testimony by Walker indicating that the agreement to which Walker referred in this action involved only the Tyler Ranch.

Insofar as the testimony could have been construed to apply only to the Tyler Ranch, and under the *Okken* standard we must so construe it, the question then becomes whether or not the contract is invalid under Section 9–06–04, N.D.C.C., because it could not be performed in one year.

■ If there is any possibility that an oral contract is capable of being completed within one year, the contract is not within the statute of frauds even though it is clear that the parties may have intended and thought it probable that the contract would extend over a longer period, and even though the contract does so extend. *Drummey v. Henry*, 115 Mich. 107, 320 N.W.2d 309 (1982). Thus the contract must be *impossible* of performance within one year if it is to be proscribed by the statute. *Johnson v. Ward*, 265 N.W.2d 746 (Iowa 1978); Restatement (Second) of Contracts, § 130. Furthermore, the authorities indicate that if the contract is for the duration of a lifetime it is not within the statute of frauds because of the possibility that the performer may die within that time period. See 2 Corbin on Contracts Sec. 446 at 548–550; 3 Williston on Contracts Sec. 495 at 579–583.

■ We agree with Walker that a judgment n.o.v. should not have been entered on the basis the contract was invalid because it could not be performed within one year. However, the trial court also determined that judgment n.o.v. should be entered because the property to be sold was not identified nor was there any evidence to indicate the obligation of Clairmont under the contract. But we must view the evidence in the light most favorable to the verdict and we believe there is sufficient evidence in the record whereby the jury could have concluded that the property involved was the Tyler Ranch. Although a precise description would require reference to extrinsic documents, we do not believe that factor alone is sufficient for a conclusion that the property to be sold was not identified. *Rohrich v. Kaplan*, 248 N.W.2d 801 (N.D. 1977).[1] Nor do we believe a judgment

---

1. There may be some dispute as to whether or not the property included was only the Tyler Ranch or the Tyler Ranch as well as the unsold property in Tyler's First and Second Additions. In either case, a precise legal description of the property is available although not part of the evidence before the trial court. Walker points out that no objection was made to the first question on the special jury verdict form to which the jury responded "yes" and which merely asked:

"Has the plaintiff, Bergquist Walker Real Estate, Inc., established by the greater weight of the evidence that they and the defendants,

n.o.v. is justified because of insufficient evidence as to Clairmont's obligation under the contract. There was evidence that Walker's commission was to be the same commission he received for assisting Dome Development Corporation with the sale of property in the Grandview Heights development. Both Walker and Clairmont were involved in the sale by the Dome Development Corporation and the compensation Walker received for his efforts in that sale. This evidence, when considered in the light most favorable to the verdict, is sufficient.

■ The basis for the conditional order for a new trial was the insufficiency of the evidence to support the jury verdict of $500,000. In *Okken v. Okken, supra,* we noted that, on a motion for judgment n.o.v., the trial judge has no discretion in viewing the evidence but that on a motion for a new trial the trial judge may, within limits, weigh the evidence and judge the credibility of witnesses. Thus, when a motion for a new trial is made and the reason given in support of the motion is that there was insufficient evidence to justify the verdict, the moving party is asking the trial court to decide whether or not the verdict is against the weight of the evidence. In making this decision the trial judge must weigh *all* the evidence. We have thus held that a motion under Rule 59(b), N.D.R.Civ.P., is addressed to the sound discretion of the trial court and we will not disturb that decision absent a showing of a manifest abuse of discretion. *Okken, supra.*

Here, Walker contends that there was sufficient evidence to sustain the jury verdict of $500,000. He points to the evidence of one sale of Tyler property by Walker for which he was to receive a commission of $600 and argues that the jury could very well have multiplied the grouping of lots to be sold by the amount of the commission realized in one case and this would result in a figure that the jury could conclude would be Walker's initial damages.

or either of them, entered into an exclusive real estate listing agreement for the sale of

In support of his position, Walker refers us to a previous decision of this court in *North American Pump Corp. v. Clay Equipment Corp.,* 199 N.W.2d 888 (N.D.1972), in which the court held that uncertainty as to the amount of damages does preclude recovery and that if a reasonable basis for computing the approximate amount of damages is provided, that is all the law requires. In that case the court further stated:

"Thus the uncertainty which prevents recovery of damages is the uncertainty as to the fact of damages, not the uncertainty as to the amount thereof. Where it is reasonably certain that damages have resulted, mere uncertainty as to the amount will not preclude recovery or prevent the jury from awarding damages. The proof must show with reasonable certainty that the plaintiff suffered damages and that such damages resulted from defendant's wrongful breach. Where the cause of and existence of damages have been established with sufficient certainty, recovery is not going to be denied because the exact amount of damages is difficult to ascertain, and in such case fixing the amount of damages will be left to the jury in the exercise of its sound discretion under proper instructions from the court." 199 N.W.2d at 896.

■ Although the decision in *North American Pump Corp.* would appear to support Walker's position, there are some substantial differences between the cases. Walker introduced evidence of one sale and his commission thereon which he contends could be used to substantiate the verdict. In *North American Pump Corp.* the plaintiff proved a number of sales in its territory by agents of the defendant during the period of plaintiff's exclusive contract. More significantly, however, in *North American Pump Corp.* this court was reviewing an order denying a motion for judgment n.o.v. or, in the alternative, for new trial. Here, we are reviewing an order granting a new

the property known as the Tyler Property?"

trial. We have previously herein reviewed the standard to be used by the trial court in granting or denying a motion for a new trial and the standard to be used by this court in reviewing the decision of the trial court on such a motion. We have examined the record in this case and we conclude that the trial court did not abuse its discretion in granting a new trial because of insufficiency of the evidence as to the amount of damage incurred by Walker as a result of the breach of contract by Clairmont.

Walker vigorously argues, however, that the reason there is insufficient evidence as to the amount of damage he incurred as a result of Clairmont's breach of contract is due to the trial court's ruling during the trial that the only evidence of damage that would be permissible would be on the theory of quantum meruit. The trial court's alternative order for a new trial limited the new trial to the "issue of damages alone, but then only allowing damages on a quantum meruit basis upon the application of the plaintiff to amend his Complaint." Because of the limitations placed upon the new trial by the trial court we will consider the issue of the proper measure of damages.

In ruling that only evidence of damage on a quantum meruit basis would be admitted the trial judge stated:

"I am saying by putting Mr. Walker back into the identical position before that agreement was breached, he has suffered no harm. That is my theory of the case. He has suffered no harm if I gave him everything back that he earned in time, in money, in prospective sales that he had a sale, I would make him whole and the mere fact that I don't allow the contract to continue, they have decided to terminate that." [2]

The order of the trial court granting the new trial only on the issue of damage and only on a quantum meruit basis indicates a similar conclusion.

As we have already noted herein, this court has previously held that where

damage obviously has been suffered and there is no definite evidence available for an exact determination of the amount of damage resulting from a breach of contract, the best evidence which the circumstances will permit is all the law requires; the uncertainty which prevents recovery of damages is the uncertainty of the fact of damage, not the uncertainty of the amount. Where it is reasonably certain that substantial damage has resulted, mere uncertainty as to the exact amount will not preclude recovery. *North American Pump Corp. v. Clay Equipment Corp., supra.* We do not, however, construe that decision to permit damages that are not clearly ascertainable. Sec. 32–03–09, N.D.C.C.; *Vallejo v. Jamestown College,* 244 N.W.2d 753 (N.D.1976). We believe that the injured party is entitled to have his recovery include the value of the services he has already rendered, his disbursements, and such prospective profits as the injured party can establish would have been his, that he would have made, or which he has lost. Such profits are represented by the commission stipulated in the contract, but the injured party may not recover conjectural profits. In connection with the loss of prospective profits, the injured party can recover only to the extent that the evidence he produces affords a sufficient basis for estimating with reasonable certainty the amount of profits prevented by the wrongful breach of the contract. Thus, if he can show that he could and probably would have obtained buyers in accordance with the contract, such evidence would be sufficient to raise an issue of fact with respect to the loss of prospective profits. *Albright v. Texcellere Corp.,* 561 S.W.2d 533 (Tex.Civ.App.1977); *Sunshine v. Manos,* 496 S.W.2d 195 (Tex.Civ.App.1973); *Perrin v. Pearlstein,* 314 F.2d 863 (2d Cir. 1963); 12 C.J.S. *Brokers* § 41; 12 Am. Jur.2d, Brokers, § 64.

Because we cannot determine what evidence may be offered on retrial of this matter we will not attempt to comment

---

**2.** The trial court also indicated that it would, for the purpose of proving any punitive damages, admit evidence that the contract was ter-minated willfully or maliciously. That is not an issue in this appeal, however.

further as to the evidence which may be offered to establish the damage caused by a breach of contract. Insofar as the trial court's order with regard to the evidence of damage to be admitted at the new trial is inconsistent with the standard we have outlined herein, the order is hereby modified. Furthermore, we note that the elements of the contract are closely connected with the issue of damages and the trial court determined there was a lack of evidence to sustain the existence of a contract.[3] We therefore believe it is desirable that a new trial encompass all the issues raised by the pleadings in the action, and the order granting the new trial is modified accordingly. Rule 35(b), N.D.R.App.P.

The judgment n.o.v. is reversed; the order granting a new trial is affirmed as modified consistent with this opinion.

ERICKSTAD, C.J., and SAND and PAULSON, JJ., concur.

PEDERSON, Justice, dissenting.

Although Justice VandeWalle has discussed principles of law with which I agree, I do not agree that they are dispositive of this case.

When sophisticated business people rely upon oral agreements covering complex matters, their errors are only more complicated than when amateurs do it. If Walker had "exclusive right to sell lands," it should be presumed that he had the "right to sell lands" and the sales he made would have to be fulfilled by Clairmont signing the appropriate deeds.

Ordinarily a party cannot claim, on appeal, the benefit of a version of relevant facts more favorable to him than he has made for himself by his own testimony. *Malarchick v. Pierce,* 264 N.W.2d 478, 480 (N.D.1978).

Oral authorization of an agent is sufficient for any purpose "except that an authority to enter into a contract required by law to be in writing ... [with one exception not applicable here] can be given only by an instrument in writing." Section 3–02–06, NDCC. See *Severson v. Fleck,* 148 F.Supp. 760 and 251 F.2d 920 (8th Cir.1958).

Presuming, however, that Walker's claim was just loosely stated and he really didn't intend to say that he could "sell" land as Clairmont's agent, but that he was an employee who would just provide the personal service of seeking out buyers for Clairmont to deal with, then we run into § 34–01–02, NDCC.

> "Even if the trial judge's reasoning were incorrect, we will not reverse the proper judgment on that basis. See *KFGO Radio, Inc. v. Rothe,* 298 N.W.2d 505, 509 (N.D.1980)." *Bohn v. Bohn Implement Co.,* 325 N.W.2d 281, 283 (N.D.1982).

I would affirm the granting of a judgment notwithstanding the verdict by the trial court. There would, therefore, be no reason to consider the matter of granting a new trial.

---

**3.** As we have already noted in *Okken v. Okken,* 325 N.W.2d 264 (N.D.1982), the jury is the judge of the credibility of the witnesses. In this instance many of the same witnesses testifying as to the existence of the contract will also testify with regard to damage. Therefore, the same jury that determines the existence or nonexistence of a contract should, if a contract is determined to exist, determine the damages for breach of the contract. This will avoid a situation where one jury will judge the credibility of a witness for the purpose of determining the existence or nonexistence of a contract and yet another jury will judge the credibility of the same witness with respect to damages.