**FIRST NATIONAL BANK OF FARGO, a national banking association, Plaintiff and Appellee,**

v.

**Eileen E. Gross KETCHAM, Defendant and Appellant,**

**The unknown heirs, devisees, and creditors of James C. Gross, deceased, First Federal Savings and Loan Association, Kent Conrad * as Tax Commissioner of the State of North Dakota, and all persons unknown, claiming any estate or interest in, or lien or encumbrance upon, the real estate described in the complaint, Defendants.**

Civ. No. 10312.

Supreme Court of North Dakota.

June 24, 1983.

* See Substitution of Successor to Public Office,    Rule 25(d)(1), NDRCivP.

Conmy, Feste, Bossart, Hubbard & Corwin, Fargo, for plaintiff and appellee; argued by Wickham Corwin, Fargo; Kim E. Brust and Charles A. Feste, Fargo, on brief.

Stefanson, Landberg & Alm, Moorhead, Minn., for defendant and appellant; argued by Randolph E. Stefanson, Moorhead, Minn.

PEDERSON, Justice.

This is an appeal from a judgment for the First National Bank notwithstanding a jury verdict for Ketcham. The Bank sued Ketcham on note number 96142, dated February 2, 1979, in the amount of $13,415.62 plus 10% interest, secured by a second mortgage on Ketcham's home. After the Bank proved a prima facie case, which was in effect conceded, the Bank rested and the trial proceeded with Ketcham attempting to prove her counterclaim that the note and mortgage were void and of no legal effect.

At the close of Ketcham's evidence, the Bank moved for "dismissal" [1] [of Ketcham's counterclaim] or, in the alterna-

---

1. The explanatory note to Rule 41, NDRCivP, states in part: "A directed verdict should be moved for under Rule 50 in a trial by jury, instead of asking for a dismissal." Professors Wright and Miller in 9 Federal Practice and Procedure § 2523 state that it is not surprising that there is often confusion in the use of "motion for involuntary dismissal" and "motion for directed verdict," but conclude that "[i]f counsel should use the wrong name, this defect

tive, for a "directed verdict"[2] on grounds which could be characterized as (1) insufficiency of the evidence, and (2) no right to relief as a matter of law.[3] The Bank's motion was not granted. The jury returned a verdict for Ketcham and judgment was entered on the verdict. In accordance with Rule 50(b), NDRCivP, the Bank then moved for vacation of the judgment and for judgment in accordance with its motion for a directed verdict.[4] A new trial was prayed for in the alternative.[5]

The trial court granted those parts of the Bank's motion seeking the vacation of the judgment and entry of judgment for the Bank notwithstanding the verdict. The trial court denied the alternative motion for new trial. Only Ketcham appealed; however the Bank, without cross-appealing, asserts error in the denial of the motion for new trial, which it can do under Rule 50(c)(1).[6] We affirm the judgment entered notwithstanding the verdict.

should be disregarded and a motion in a jury case, whatever it is called, should be treated as a motion for directed verdict." See also *Larson v. Unlimited Business Exch. of N.D.,* 330 N.W.2d 518 (N.D.1983), and *Frank v. Daimler-Benz, A.G., Stuttgart,* 226 N.W.2d 143, 147 (N.D.1975).

2. Rule 50(a), NDRCivP specifies in part that "[a] motion for a directed verdict shall state the specific grounds therefor."

3. Counsel said:
"I move for a directed verdict by the Court on the grounds and for the reasons that, number 1, the—the evidence presented by defendant's counterclaim does not establish any duty on the part of the First National Bank with respect to seeing that life insurance was maintained on the life of James Gross for the benefit of his ex-wife, Eileen Ketcham, the defendant in this case.
"Number 2, that with regard to whether or not a duty exists that is a matter of law for the Court to determine prior to the hearing of any evidence of negligence or proximate cause in connection with the negligence—negligence action.
"Number 3, there has been some discussion about this matter that the plaintiff, by virtue of its conduct, is estopped from asserting its foreclosure action as a part of its case in chief; that there is no evidence at all which supports the contention that plaintiff has been guilty of estoppel or waiver by its conduct in that First National Bank at no time assumed a—contractually or otherwise—any duty to the defendant, Eileen Ketcham, concerning matter of life insurance and the payment of life insurance premiums on the life of James Gross.
"Paragraph number next [4], that regardless of the question of whether insurance may or may not have been required and even conceding—although I do not—that the evidence demonstrated and the testimony in evidence demonstrated that insurance was a requirement of the loan culminated on January 30, 1973, any subsequent action by the bank with regard to that life insurance would—

would have been for its own benefit and not for the benefit of the defendant; and that without a clear resolve and absolute intent contractually for First National to have contracted with this defendant, Eileen Ketcham, to provide insurance or to see that the insurance premiums were paid then there is absolutely no basis for stating that there is a duty on the part of First National to provide the insurance or to see to it that the insured and the owner of the policy and one of the participants in the loan paid the premiums on the insurance that was on his life in which First National may—was designated as the beneficiary.
"Number next [5], stating again that the—the evidence is devoid of any showing of facts that give rise to a duty and that there is no element in the judgment of plaintiff's counsel that promissory estoppel, or estoppel of any manner, is evidence—evident in the testimony; and that as a matter of law pursuant to the cases establishing that precedence in North Dakota the Court is to determine whether or not there is a duty and the Court therefore, it is requested, should direct a verdict in favor of the plaintiff on the basis that no duty has been established by the pleadings or by any of the testimony or evidence presented in this case.
"That concludes my motion."

4. The Bank's motion lists 17 separately numbered "grounds." A party may not base a motion for judgment notwithstanding the verdict on grounds that were not included in the motion for a directed verdict. 5A Moore's Federal Practice § 50.08 at pages 50–86.

5. Causes for new trial are not limited to grounds that were included in the motion for a directed verdict but may include any of the causes listed in Rule 59(b), NDRCivP. See *Anderson v. Kroh,* 301 N.W.2d 359, 364 (N.D. 1981).

6. The authorization is included in the statement: "In case the motion for a new trial has been conditionally denied, the appellee on ap-

Eileen Ketcham, formerly Eileen Gross, and her former husband, James C. Gross, obtained numerous individual and joint, short-term, unsecured, commercial loans from First National Bank, starting in 1971, continuing after Eileen and James were divorced in 1978, and ending upon James's death on December 21, 1979.

Eight of the notes introduced were for less than $4,000. Seven of these were for terms of six months or less, and one was an installment loan for 18 months. All eight were unsecured and all were covered by Credit Life Insurance.

Four of the notes were for sums over $12,000, and all were converted from single payment to installment payments. Note number 76577, dated January 30, 1973, was a $17,000 note at 8% interest for a term of one year, was unsecured but was co-signed by James Gross's parents and Eileen's father. The note contained an election of insurance coverage and was marked as follows:

"(X) I DO NOT want Credit Life or Sickness & Accident Insurance."

Note number 83557, dated February 13, 1975, for $15,121.10 at 9½% interest for a term of one year, was unsecured but was co-signed by Eileen's father. This note also contained the election:

"(X) I DO NOT want Credit Life or Sickness & Accident Insurance."

An unnumbered note, dated April 11, 1977, for $12,929.66 at 9½% interest for a term of one year, was unsecured and apparently was not co-signed. (The original note was not introduced—the original may have borne a number and co-signers.) This note also contained the election:

"(X) I DO NOT want Credit Life or Sickness & Accident Insurance."

Note number 96142, the subject of this suit, dated February 2, 1979, for $13,415.62 at 10% interest, due on June 20, 1985, was secured by a second mortgage on the Gross home in Fargo. This note also contained the election:

"(X) I DO NOT want Credit Life or Sickness & Accident Insurance."

The evidence discloses that when note number 76577 was executed in January 1973, there was a discussion with Bank officials about term life insurance on both James and Eileen. The evidence is confusing. A Bank notation states: "We have sold $100,000 life insurance to Jim and his wife." The testimony, however, discloses that coverage was rejected and James and Eileen purchased term life insurance in the amount of $50,000 and $25,000, respectively, from an independent insurance agency and, at least insofar as the $50,000 policy on James's life is concerned, the Bank was named as sole beneficiary and the policy was delivered to the Bank. There is no claim made that the same or any similar discussion of insurance took place when the three subsequent notes were negotiated.

The record discloses further that subsequent to the divorce in 1978 James, without the knowledge or consent of the Bank or of Eileen, first changed the beneficiary on the $50,000 policy to his son and, thereafter, quit paying premiums and the coverage was cancelled prior to James's death in December 1979. Eileen also terminated or converted her policy without notice to or consent of the Bank.

■ Generally, the borrower on a note contracts to repay the loan according to the terms of the instrument. See *Farmers & Merchants National Bank of Hatton v. Lee*, 333 N.W.2d 792 (N.D.1983). In this case, Eileen's counterclaim to the Bank's suit alleged that, in spite of the terms of the note, she was "lead to believe" that the Bank would see to it that the loan was covered by insurance on James's life, that she "relied" thereon, and thus the note and mortgage were "void and of no legal effect."

■ Because it may be useful to clarify the application of the rule in the trial courts, we believe that it is in the interest of judicial economy that we discuss, first, the Bank's assertion that "the trial court abused its discretion by concluding that the

peal may assert error in that denial ...." Rule 50(c)(1), NDRCivP.

evidence warranted a judgment notwithstanding the verdict, but did not warrant the conditional grant of a new trial." Cited in support of this assertion is *Okken v. Okken,* 325 N.W.2d 264 (N.D.1982), in which Justice VandeWalle analyzed the relationship between alternative motions for judgment notwithstanding the verdict and for a new trial. Although a motion for judgment notwithstanding the verdict is to be measured both in the trial court and in this court "by a far more rigorous standard" [7] than a motion for a new trial, it does not necessarily follow that a motion for a new trial should always be assumed to be a "lesser included" remedy. If the judgment notwithstanding the verdict is granted on strictly a question of law, having no relationship whatsoever to sufficiency of the evidence, it is entirely possible that judgment notwithstanding the verdict may be entirely justified but a new trial would not be. We believe that this is such a case, even though the opposite is ordinarily true.

▉▉ Rule 59(b) motions for a new trial are addressed to the sound discretion of the trial court. *Okken v. Okken, supra,* 325 N.W.2d at 269. The denial of a new trial in this instance has not been shown to be unreasonable, arbitrary, or unconscionable. A new trial would serve no useful purpose unless the parties changed their strategy, which is not allowed. *Waletzko v. Herdegen,* 226 N.W.2d 648, 653 (N.D.1975). No manifest abuse of discretion occurred.

▉ When we examine the complaint, the answer and counterclaim, the grounds stated for a directed verdict, and the reasons given in the trial court's memorandum opinion for granting the Bank's motion for judgment notwithstanding the verdict, we reach the inescapable conclusion that Ketcham has neither alleged nor proved with competent evidence a defense to the equitable action of the Bank to foreclose a second mortgage on Ketcham's home given as security on the note.[8] The issues on appeal

arise out of the defenses raised by Ketcham's answer and counterclaim.

Ketcham alleged that the Bank's negligence in failing to require insurance caused the failure to satisfy the mortgage, that the Bank is estopped from foreclosing the mortgage, and that the Bank waived its right to collect the note. Ketcham asserts that she was led to believe that the loan was covered by insurance and relied thereon. To the extent that her defense and counterclaim demanded cancellation or reformation of the note, Ketcham sought an equitable remedy. See 13 Am.Jur.2d Cancellation of Instruments §§ 2 and 3, and 66 Am.Jur.2d Reformation of Instruments § 10. See also, generally, 17 Am.Jur.2d Contracts § 482. Under such circumstances, entitlement to a jury trial is questionable; however, neither party objected thereto in this case.

As we have consistently held in cases involving motions for directed verdict and for judgment notwithstanding the verdict, we view the evidence in the light most favorable to the party against whom the motion is made. *Haggard v. OK RV Sales,* 315 N.W.2d 475, 477 (N.D.1982); *Rau v. Kirschenman,* 208 N.W.2d 1, 4 (N.D.1973). Another rule that we apply when we are viewing the evidence is that one cannot claim the benefit of a more favorable version of relevant facts than he has made for himself. Testimony unfavorable to one's own contention can be a "judicial admission." See *Malarchick v. Pierce,* 264 N.W.2d 478, 480 (N.D.1978).

Ketcham testified that the preliminary discussion prior to the January 30, 1973 loan included a statement by the Bank's loan officer " . . . that we should have insurance to—life insurance on both our lives should something happen, that the note would be paid for." She acknowledged, however, that the transaction was completed and the loan made on January 30 and, even though there was an application for insurance

---

7. See 9 Wright and Miller, Federal Practice and Procedure § 2531.

8. Although the note sued on is not due until June 20, 1985, it contains an acceleration clause applicable when an installment payment is missed.

forthwith, it was not until November that problems relating to insurability were overcome and the policies issued.

The trial court, in granting the Bank's motion for judgment notwithstanding the verdict, held:

"There was no evidence offered at trial by Ketcham which could be interpreted as conduct on the part of First National which would establish the critical element of mutual assent whereby it could be shown that the bank impliedly contracted to undertake to maintain, monitor or see that the premiums were paid on the life insurance policy as carried on the life of Gross. Nor was it shown that the bank impliedly contractually agreed to monitor life insurance on Gross in such a manner as to determine that the insurance remained in effect, or even that Ketcham be notified that Gross had defaulted on his premiums and the policy was about to lapse."

The trial court's remarks are particularly pertinent in this case where the written contract (note) contains an explicit rejection of insurance coverage. Ketcham made no effort to show how or why that clause should be stricken from the contract or rescinded and replaced with an implied clause providing the exact opposite.

Grounds for extinguishing a clause in a contract can be no less demanding than that provided by law for the extinguishment or alteration of any contract obligation. See Chapter 9–09, NDCC. No sufficient allegation was made and no evidence was introduced that would fulfill the statutory requirements. Equitable issues are generally matters for the court rather than for a jury. For exceptions see *Schaff v. Kennelly*, 61 N.W.2d 538, 546 (N.D.1953).

Ketcham cannot now be heard to contend that she did not understand the distinction between an insured and an uninsured loan. She offered into evidence two notes which she had signed, dated March 4, 1977 and July 13, 1977, where the election or requirement to insure is clearly stated: "I wish to have: ☒ credit life insurance."

The insurance premiums are separately itemized and added to the loan principal on the face of these notes. Copies of the life insurance certificates are attached to the exhibits she introduced.

The Bank was entitled to judgment in its favor as a matter of law. See *South v. National R.R. Passenger Corp.*, 290 N.W.2d 819, 842 (N.D.1980). The words in the contract electing that the loan not be covered by a policy of life insurance were not ambiguous. A citation provided to us by Ketcham's counsel seems quite pertinent. In *Hotchkiss v. National City Bank of New York*, 200 F. 287, 293 (S.D.N.Y.1911), Judge Learned Hand wrote:

"If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes upon them, he would still be held, unless there were some mutual mistake, or something else of the sort."

Even though we may not agree with all of the reasoning relied upon by the trial court, we conclude that the judgment notwithstanding the verdict was correctly entered for First National Bank. The judgment is affirmed.

ERICKSTAD, C.J., and SAND and PAULSON, JJ., concur.

VANDE WALLE, Justice, dissenting.

I cannot agree with the conclusion reached by the majority opinion nor the rationale used to reach that conclusion. Neither the pleadings nor the evidence indicate that the parties relied upon the rejection by the Grosses on the loan forms of credit life insurance. Rather, the issues centered around other insurance policies on the lives of the Grosses, delivered to the Bank, on some of which policies the Bank was named as beneficiary to the extent of the Bank's interest. Furthermore, I do not read the trial judge's order for judgment notwithstanding the verdict as relying upon the rejection by the Grosses of credit life insurance as the basis for his disposition of the matter.

Although the evidence supporting Ketcham's position may not be conclusive, I believe there is some evidence to support the jury verdict. I do not intend to further elaborate on the evidence, although much of the evidence upon which Ketcham relied is only fleetingly referred to in the majority opinion. On the basis of the rationale in *Bergquist-Walker Real Estate, Inc. v. William Clairmont, Inc.,* 333 N.W.2d 414 (N.D. 1983), and *Okken v. Okken,* 325 N.W.2d 264 (N.D.1982), in which we analyzed the standards to be used in reviewing a judgment notwithstanding the verdict, I would reverse the judgment notwithstanding the verdict.

The trial court apparently denied the motion in the alternative for a new trial because the motion for judgment notwithstanding the verdict was granted. It is apparent from reading the trial judge's memorandum opinion that he believed the evidence was insufficient to sustain the verdict. Insufficiency of the evidence to justify the verdict is one of the specific causes for granting a new trial. Rule 59(b)(6), N.D.R.Civ.P.; *Bergquist-Walker Real Estate, Inc. v. William Clairmont, Inc., supra; Okken v. Okken, supra.* I can only conclude that if the judgment notwithstanding the verdict were to be reversed the trial court would have granted the motion in the alternative for a new trial based on insufficiency of the evidence. I would therefore reverse the order denying the alternative motion for a new trial and remand to the trial court for a new trial.