A. T. S. LABORATORIES, INC., APPELLEE, *v.* CESSNA AIRCRAFT
COMPANY ET AL., APPELLANT.

(No. 8561—Decided March 22, 1978.)

*Mr. C. R. Keller, Jr.*, for appellee.

*Mr. Burt Fulton*, for appellant Cessna Aircraft Company.

*Mr. K. R. Aughenbaugh*, for appellants Mr. Robert M.
Freed and Freedom Field, Inc.

BELL, J. The facts leading to the instant appeal, being
of import to our decision, are stated briefly as follows:

The Cessna Aircrift Co. (Cessna) was the manufacturer of a certain company type 182 aircraft, certification No.
N91199. That product was sold originally by Cessna to defendants Freedom Field, Inc. (Freedom) and Robert M.
Freed (Freed) who, in turn, sold the plane a year later to
plaintiff, A . T. S. Laboratories, Inc. (A. T. S.). A. T. S. experienced difficulty with the plane and thereafter filed a
suit against Freedom, Freed and Cessna claiming that all
three defendants expressly and impliedly warranted to A.
T. S. the condition and merchantability of the unit. Additionally, A. T. S. alleged that defendants were negligent in

failing to discover and disclose defects in the plane prior to the sale thereof.

Various pleadings and counterpleadings followed to the eventual end that: (1) A. T. S. withdrew its negligence claims against all defendants; (2) A. T. S. withdrew its claims based on violations of express warranty against defendant Cessna but continued its claims founded on violations of implied warranty, and (3) A. T. S. dismissed entirely its case against Freed and continued its claims against defendant Freedom on the basis of breach of both express and implied warranty. Freedom filed a counterclaim against A. T. S.

At trial, the jury found in favor of A. T. S. against defendant Cessna and in favor of Freedom against A. T. S. on the counterclaim. The claim of A. T. S. against Freedom was not the subject of a verdict by the trial jury. Thereafter, in response to plaintiff's motion filed under Civ. R. 50(B) the trial court ruled that Freedom had breached its warranty to A. T. S., found in favor of the latter, and awarded a nominal damage amount. The record indicates that the judgment order in this cause omitted the value of the verdicts rendered and a corrected order was placed to record. The verdicts rendered and interrogatories answered by the jury complete the record of the trial proceedings.

Cessna now appeals that judgment and claims four assignments of error which are discussed individually hereafter.

## I.
### Assignment of Error

"A manufacturer of a product cannot be liable in damages on a theory of breach of implied warranty [or strict liability in tort] to a purchaser of the product for damages to the product itself when the product was purchased in a used condition from a third party not the manufacturer."

Beginning with its decision in *Rogers* v. *Toni Home Permanent Co.* (1958), 167 Ohio St. 244, the Ohio Supreme Court began a continuing legal consideration of

the subject of liabilities imposed upon parties placing manufactured products into the stream of commerce. The scope of such liability, historically, has been broadened and extended by the court. In *Rogers, supra*, a retail purchaser was allowed damages from the manufacturer when the purchaser used the manufacturer's product and suffered personal injury by virtue of the use thereof. The court, stating that the representations concerning the product were made by the manufacturer to the buying public, allowed the purchaser to recover on the theory of a violation of express warranty even though direct privity between plaintiff and defendant did not exist. We note that this matter involved personal injury to the purchaser and not damage to the subject of purchase, the item itself.

Seven years later in *Inglis* v. *American Motors Corp.* (1965) 3 Ohio St. 2d 132, the secondary purchaser recovered damages on the basis of a violation of an express warranty against an automobile manufacturer. The facts in *Inglis, supra*, show, again, no proof of direct privity between plaintiff and defendant, and again the court hinged its opinion on the reliance of the purchaser on representations made by the seller in its national advertising material. In *Inglis*, damage to the product itself was in contention. The court affirmed damages awarded for the "diminution of value of the automobile attributable to latent defects not ascertainable at the time of purchase." *Inglis* advanced the cause undertaken by the court in *Rogers, supra*. *Inglis*, in large, appears to be based on the reasoning of the New Jersey Supreme Court in *Santor* v. *A. & M. Karagheusian, Inc.* (1965), 44 N. J. 52, 207 A. 2d 305. Because of its definitive impact on the emerging product liability law in Ohio, we quote a portion of the *Santor* opinion cited in *Inglis, supra*, at 139-140:

"The Appellate Division stated its conception of the law in this language:

" 'It is clear to us that as of this writing, absent personal injury or damage to health consequent upon use of the product in question, there is no action in this state on the part of a purchaser of goods for breach of warranty in

respect of their quality or fitness for use except as against the party from whom he has purchased them.' 82 N. J. Super. at page 322. However the Supreme Court of New Jersey disagreed and stated the law as follows:

" 'There is no doubt that the great mass of warranty cases imposing liability on the manufacturer regardless of lack of privity were concerned with personal injuries to the ultimate consumer. * * * But we see no just cause for recognition of the existence of an implied warranty of merchantability and a right to recovery for breach thereof regardless of the lack of privity of the claimant in the one case and exclusion of recovery in other simply because loss of value of the article sold is the only damage resulting from the breach.

" 'The manufacturer is the father of the transaction. He makes the article and puts it in the channels of trade for sale to the public. No one questions the justice of a rule which holds him liable for defects arising out of the design or manufacture, or other causes while the product is under his control. After completion the article may pass through a series of hands, * * *. For these reasons in the recent past the courts of many jurisdictions, in an endeavor to achieve justice for the ultimate consumer, have imposed an implied warranty of reasonable fitness on the person responsible for the existence of the article and the origin of the marketing process. From the standpoint of principle we perceive no sound reason why the implication of reasonable fitness should be attached to the transaction and be actionable against the manufacturer where the defectively made product has caused personal injury and not actionable when inadequate manufacture has put a worthless article in the hands of an innocent purchaser who has paid the required price for it. * * *' "

Both *Rogers* and *Inglis* base their theory of liability on a violation of express warranties by the manufacturers. Thus, the question of whether the doctrines of these cases could be further extended to circumstances lacking both privity between the parties and express warranties brought about by substantial advertising remained unresolved.

In 1966, the court entered a consideration of these two facets of the question before us now in *Lonzrick* v. *Republic Steel Corp.* (1966), 6 Ohio St. 2d 227. The court allowed recovery by plaintiff on a theory of implied warranty. On page 229 thereof, the court stated as one of three possible causes of action allowable to plaintiff:

"(3) An action in tort which is based upon the breach of a duty assumed by the manufacturer-seller of a product. This duty is assumed by the manufacturer by reason of his implicit representation of good merchantable quality and fitness for intended use when he sells the product. * * *"

The damage issue in *Lonzrick* was the personal injury suffered by plaintiff and caused by the collapse of the product itself. The *Lonzrick* court then moved one further step in accepting the theory of product liability, following *implied* warranty and in discarding the necessity of plaintiff's reliance on advertising to underscore liability. *Lonzrick, supra*, at 237. A recovery for damage to the product itself was not an issue in this cause. It was in *Iacono* v. *Anderson Concrete Corp.* (1975), 42 Ohio St. 2d 88.

The plaintiff, in *Iacono*, entered into an oral agreement pertaining to the installation of a driveway, patio and sidewalk. As weathering of these areas took place, the surface of the driveway scaled, and "pop out" holes resulted. Plaintiff filed suit on the basis of defendant's implied warranty on the product furnished. The court held that the claim did, in fact, sound in tort and held further that such a cause of action was not limited to circumstances arising from personal injuries. In *Iacono*, the court stated, at 93:

"* * * [W]e perceive no rational basis for distinguishing between the two [personal injury and property damage]."

The Supreme Court affirmed recovery on the part of Iacono against defendant Anderson who supplied concrete for the job to the contractor, Padovan. Here again, no express warranty existed between plaintiff and defendant and between them there was no privity of contract.

*Iacono,* as was the case in other opinions referred to

above, relies in part on the doctrine originally approved from *Santor, supra*. Specifically relating to the problem before us now, the *Santor* court states:

"* * * although the doctrine has been applied principally in connection with personal injuries sustained by expected users from products which are dangerous when defective, we reiterate our agreement with *Randy Knitwear, Inc.* v. *American Cyanamid Company, supra*, that the *responsibility of the maker should be no different where damage to the article sold or to other property of the consumer is involved* * * *" (Emphasis added.|) *Santor* v. *A & M Karagheusian, Inc.* (1965), 44 N. J. 52, 66, 207 A. 2d 305, 312.

Our case is predicated on plaintiff's allegation that at the time of manufacture, the aircraft manufactured by Cessna contained a latent defect, which, undiscovered by the original buyers, was transferred in turn to A. T. S. We stress that this statement is that of the plaintiff and is subject to proof in the trial arena. The suit is based in tort and under such circumstances we hold that the manufacturer can, under suitable proofs, be held liable to a purchaser of a product for damages to that product even though such was purchased from a third party in a used condition. This recovery may be allowed under the theory of a breach of implied warranty.

Also, in support of the contention that personal property includes the product itself is the Supreme Court's opinion that breach of implied warranty and the theory of strict liability as set forth in Restatement of Torts 2d 347, Section 402(A) (1965) are virtually indistinguishable. *Temple* v. *Wean United, Inc.* (1977) 50 Ohio St. 2d 317. Pursuant to this section of the Restatement, the ultimate consumer is entitled to recover for physical harm to his person or property.

The term "property" has been defined. The Wisconsin Supreme Court in *Air Products and Chemicals, Inc.,* v. *Fairbanks Morse, Inc.* (1973), 58 Wis. 2d 193, 218, 206 N. W. 2d 414, 427, quoted the Pennsylvania Supreme Court as follows:

" 'The language of the Restatement, speaking as it

does of injury to either the individual or his property, appears broad enough to cover practically all of the harm that could befall one due to a defective product. Thus, for example, were one to buy a defective gas range which exploded, ruining the buyer's kitchen, injuring him, and of course necessitating a replacement of the stove itself, all of these three elements of the injury should be compensable. The last, replacing the stove, has been sometimes referred to as ''economic loss,'' *i. e.*, ''the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.'' Comment, 114 U. Pa. L. Rev. 539, 541 (1966). There would seem to be no reason for excluding this measure of damages in an action brought under the Restatement, since the defective product itself is as much ''property'' as any other possession of the plaintiff that is damaged as a result of the manufacturing flaw. * * *' ''

With this persuasive authority and the Ohio Supreme Court's continuous and progressive expansion of the doctrine of implied warranty recoveries, we find that there is no rational reason to distinguish between injury to an individual's person or property. The latter includes the purchased product itself.

Accordingly, we overrule the first assignment of error.

## II.
### Assignment of Error

''A manufacturer of a product cannot be liable in damages on a theory of breach of implied warranty [or strict liability in tort] to a purchaser of the product for damages to the product itself when the product was purchased in a used condition from a third party not the manufacturer and when there has been a substantial change from the condition in which the product originally was sold.''

This assignment of error is in terms similar to the first but adds that recovery cannot be had on the theory of implied warranty where the evidence indicates that there has been a substantial change in the product from that condition in which the product was originally sold.

From *State Auto Mutual Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, paragraph 2 of the syllabus, we adopt the following standard on which to base any recovery in applying the theory of implied warranty. It must be proven by the preponderance of the evidence that:

" * * * (1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss. * * *"

We reason, as did the court in *Temple* v. *Wean United, Inc., supra,* that strict liability is imposed upon the manufacturer only where the defective product reaches the eventual purchaser without substantial change in the condition in which it was originally sold. See, *Temple, supra,* at 322, interpreting Section 402A(1)(b) and additional citations shown in the footnote annotation.

Cessna here argues that the instant cause, factually, parallels facts in *Temple, supra.* In that cause a press was originally manufactured by Wean United which sold same to General Motors Corporation. The latter sold the unit to Turner Industries which in turn sold it to Superior Metal Products, Inc. That company, plaintiff's employer, modified the equipment. Plaintiff was injured in the use of the press and sued Wean among others. Her suit against that defendant was unsuccessful. Citing *State Auto* v. *Chrysler, supra,* the *Temple* court set out the reasoning above noted finding that substantial changes had been made in the press after it had been placed into the stream of commerce by Wean. Cessna, in our cause, claims that a top overhaul of the engine prior to the sale to A. T. S. substantially changed the aircraft from its original condition as manufactured and claims that Cessna is thereby relieved of further liability to A. T. S.

In each case, the determination necessary to show substantial change is a factual one. In *Temple,* the facts relative to any modification of the press and as to causation leading to plaintiff's injuries were stipulated. In the instant cause, the issues of change and causation are in dispute. As we read the record here, the jury found, as fact,

that the aircraft in question contained a defect at the time the craft left the manufacturer, Cessna; the jury further found that such defect was the direct and proximate cause of the "injury" to the plane. We hold that sufficient evidence appears in the record to substantiate such a finding and, accordingly, we reject assignment of error two.

### III.

#### Assignment of Error

"A manufacturer of a product cannot be liable in consequential damages to a purchaser of the product for damages to the product itself when the product was purchased in a used condition from a third party not the manufacturer."

In its claim for damages, A. T. S. contended that (1) it was necessary to rent another plane during the down time periods to repair the unit in question ($2,994.66); (2) it was also necessary to use alternate commercial transportation during the same period ($188.19); (3) there was a loss by virtue of the original repair ($242.55); and (4) there was a net profit loss ($12,000) computed by A. T. S., resulting from the loss of use of the aircraft.

Our review convinces us that the claimed loss of profit is both indirect and remote. It is not, therefore, allowable damage. We hold, however, that the remaining items are proven to be directly and causally connected to Cessna's failure to meet the implied warranties of the aircraft for fitness and quality. It is to be noted that the total amount of the items, excepting the profit figure, is in excess of $3,400. The jury verdict is less than the figure and we find no error resulting from that verdict. 16 Ohio Jurisprudence 2d 30, 31, Damages, Sections 13, 14.

The use of the term "consequential" in defining damages is the use of a term most usually coincident with contract actions. As used in connection with actions founded in tort, as in the instant cause, the term is more coincident with the result of proximate cause. Consequential damages, as used here, means direct damage suffered as a direct and proximate result of defendant's breach of the duties imposed by the warranty implied.

We reject assignment of error three.

## IV.
### Assignment of Error

"A manufacturer of a product does not have the burden of proving that the product was not defective at the time it left the factory of the manufacturer."

In arriving at its finding against Cessna, the jury answered the following interrogatories:

"Interrogatory No. 1

"Q. Do you find by a preponderance of the evidence that Cessna Aircraft breached an implied warranty to A. T. S.?

"A. Yes."

"Interrogatory No. 3

"Q. If your answer to Interrogatory number one is in the affirmative, state the manner in which Cessna breached its implied warranty to A. T. S.

"A. No evidence was given, at anytime, by Cessna, that the plane was not defective. A. T. S. presented evidence that the plane had malfunctions at early hours."

These interrogatories illustrate the jury's process of weighing all the evidence in conformance with the test of preponderance of the evidence. To find liability, the jury made the proper conclusion that there was unrebutted evidence that the plane was defective at the time it left Cessna.

We find no error in this regard and reject this assignment of error.

We affirm the judgment.

*Judgment affirmed.*

MAHONEY, P. J., and DOYLE, J., concur.

DOYLE, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.