Curtis HAGERT, Sr., Curtis Hagert, Jr., and David Hagert, all d/b/a Hagert Farms, Plaintiffs, Appellees and Cross-Appellants,

v.

HATTON COMMODITIES, INC., and Greeley Trading Co., Defendants,

and

Powell Bean Growers Association, Defendant, Appellant and Cross-Appellee.

Civ. No. 10983.

Supreme Court of North Dakota.

March 19, 1986.

McConn, Fisher & Thune, Grand Forks, for plaintiffs, appellees and cross-appellants; argued by Patrick W. Fisher.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendant,

appellant and cross-appellee; argued by Marjorie M. Young.

ERICKSTAD, Chief Justice.

Powell Bean Growers Association (Powell) appeals from a district court judgment granting a motion by Curtis Hagert, Sr., Curtis Hagert, Jr., and David Hagert, doing business as Hagert Farms (Hagert Farms), for judgment not withstanding the verdict or, in the alternative, for a new trial, and Hagert Farms cross-appeals from the judgment. We reverse in part, affirm in part, and remand for a new trial.

Hagert Farms purchased certified Wyoming 166 pinto bean seeds from Hatton Commodities, Inc. (Hatton Commodities) for the 1980 growing season. Hatton Commodities had purchased the seed from Greeley Trading Company (Greeley), which in turn had purchased it from Powell. Hagert Farms planted the seeds on a 70 acre field on May 15, 1980, and on a 130 acre field on May 29 and 30, 1980. Before planting, each field had been fertilized to the extent necessary to produce an anticipated yield of 2,750 pounds of pinto beans per acre, and the 70 acre field had been irrigated with an overhead center pivot irrigation system. The irrigation system in the 130 acre field was not operative at the time of planting. After planting, the 70 acre field was irrigated with the overhead center pivot irrigation system.

Hagert Farms employed a private agricultural consultant to advise it on matters relative to growing a crop on irrigated land, and, on June 6, 1980, the agricultural consultant observed what he believed to be halo blight on the plants in the 70 acre field. At that time, the plants in the 70 acre field were about six inches high and the plants in the 130 acre field had germinated and begun to appear above the soil.

Further inspections and tests verified that the plants in the 70 acre field were infected with halo blight; however, no halo blight was detected in the smaller plants in the 130 acre field. Based on the agricultural consultant's advice, Hagert Farms destroyed the plants in both fields and re-seeded which resulted in a delayed growing season and an alleged reduction in anticipated yield.

Hagert Farms asserted that the pinto bean seeds were contaminated with halo blight bacteria and sued Hatton Commodities alleging negligence, breach of warranty, and strict liability in tort. Hagert Farms sought damages for the additional replanting expenses and for loss of profit due to a reduction in anticipated yield. Hatton Commodities filed a third-party claim against Greeley and Powell. Greeley filed a counterclaim against Hatton Commodities and a cross-claim against Powell. Powell filed a cross-claim against Greeley and a counterclaim against Hatton Commodities.

The claims were consolidated for trial, and the case was submitted to a jury on the breach of warranty and strict liability in tort theories. That jury returned a special verdict ultimately imposing liability against Powell[1] and, in an earlier appeal from a judgment entered as a result of that jury verdict, we reversed and remanded for a new trial. *Hagert v. Hatton Commodities, Inc.*, 350 N.W.2d 591 (N.D.1984). We concluded that economic loss, as distinguished from injury to property, may be recovered under the Uniform Commercial Code's express and implied warranty provisions but not under strict liability in tort, and to the extent that an undistinguishable part of Hagert Farms recovery was for loss of profit ordinarily only recoverable under a contract theory, Powell was enti-

1. The jury awarded Hagert Farms damages from Hatton Commodities; Hatton Commodities indemnity from Greeley; and Greeley indemnity from Powell. Judgment was entered in favor of Hagert Farms against Hatton Commodities for $66,129.23, plus post-judgment interest; in favor of Hatton Commodities and against Greeley and Powell, jointly and several-

ly, for $66,129.23, plus costs, disbursements and attorney fees of $18,639.06, and post-judgment interest; and in favor of Greeley against Powell for all sums paid by Greeley in satisfaction of the judgment in favor of Hatton Commodities, plus costs, disbursements and attorney fees of $10,861.18.

tled to a new trial. *Hagert v. Hatton Commodities, Inc., supra,* 350 N.W.2d at 594–595.

On remand, the trial court permitted Hagert Farms to amend its complaint to proceed directly against Greeley and Powell. The case was submitted to a jury on express warranty and implied warranty of merchantability theories, and the jury returned a verdict in the following form:

"We, the jury, unanimously find the following answers to the following questions submitted by the Court:

"1. Did the defendants breach expressed or implied warranties?
"ANSWER: 'Yes' or 'No'.     Yes

"2. If you answered 'Yes' to question No. 1, was the defendants' breach of expressed or implied warranties a proximate cause of damages sustained by the plaintiffs?
"ANSWER: 'Yes' or 'No'.     No

"3. Regardless of your answers to questions No. 1 and No. 2, in what sums do you find the plaintiffs damages for:

| | | |
|---|---|---|
| "(a) | Lost crops | $12,995.49 |
| "(b) | Incidental expenses | $ 2,590.73 |

"4. In what percentage do you award plaintiffs interest on damages for lost crop from October 15, 1980?
"ANSWER:     6%

"5. In what percentage do you award plaintiffs interest on damages for incidental expenses from June 15, 1980?
"ANSWER:     6%"

Hagert Farms moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court determined, as a matter of law, that Powell's breach of warranty was the proximate cause of Hagert Farms' injuries[2] and granted Hagert Farms' motion for a judgment notwithstanding the verdict and also conditionally granted the motion for a new trial. Judgment was entered in favor of Hagert Farms in the amount of $12,995.49 for the lost crop, and $2,590.73 for incidental expenses, plus prejudgment interest at

2. The trial court set forth its reasoning for granting the judgment notwithstanding the verdict in its memorandum opinion:

"The only defect in the Pinto Bean Seed which was alleged by the plaintiffs was that it was unfit because it was contaminated with Halo Blight bacteria. This was the only defect of which evidence was produced. In finding that the defendants did breach expressed or implied warranties in answering question No. 1 'Yes', the jury implicitly found that the bean seed was contaminated by Halo Blight bacteria. Since the Pinto Bean Seed was contaminated with Halo Blight bacteria, then, as a matter of law, defendants' breach of warranty had to be the proximate cause of the plaintiffs injuries to their crop and incidental expenses. There was no evidence of any other or intervening cause of the damage sustained by the plaintiffs.

"The jury found that the plaintiffs suffered damages for lost crop and incidental expenses (although not in the same amounts as the first jury). The evidence concerning incidental expenses was uncontradicted that these expenses were incurred solely because of the presence of the Halo Blight disease in the field. In the record of the case there is a total absence of any subsequent independent source of Halo Blight bacteria which would have been necessary for the presence of the disease in the field, according to all of the expert testimony. Therefore, as a matter of law, the jury's answer to question No. 2 must be vacated and judgment entered in favor of the plaintiffs.

\*   \*   \*   \*   \*   \*

"The jury's answer to question No. 2 is inconsistent with the jury's finding of damages for plaintiffs and 'award' of interest on those damages. There is no evidence in the record of any independent source of the Halo Blight bacteria which would have been necessary for the presence of the disease in the field. Therefore, as a matter of law, the jury's answer to question No. 2 is unjustified, as there is no evidence to support it. No other inference can be made but that the jury erred in not finding a proximate cause. The injury involved here is of the type to be foreseen if, as the jury found, there was a breach of warranty on the part of the defendants.

\*   \*   \*   \*   \*   \*

"There is no evidence to support the jury's finding of no proximate cause. Common sense would indicate that a finding of Halo Blight bacteria in the Pinto Bean Seed would clearly support a finding of proximate cause where the evidence was undisputed that Halo Blight disease was present in the growing crop. While the concept of 'proximate cause' was explained to the jury in the instructions, it is clear that the jury in this case misapprehended the meaning of 'proximate cause'."

the rate of six percent.[3] Powell appealed, and Hagert Farms cross-appealed.

Powell contends that the district court erred in granting Hagert Farms' motion for judgment notwithstanding the verdict because the question of proximate cause is a question of fact for the jury and there was sufficient evidence to support the jury's determination that Powell's breach of warranty was not the proximate cause of Hagert Farms' damages. Powell also contends that the special verdict form was not misleading or confusing, and the jury's answers were consistent.

Hagert Farms asserts that the trial court properly granted the motion for judgment notwithstanding the verdict to correct an obvious jury error and that, as a matter of law, the contaminated bean seed was the proximate cause of its damages.

■ A party alleging a breach of warranty has the burden of establishing the existence of a warranty, a breach of warranty, and that the breach of warranty proximately caused the damages alleged. *Northwestern Equipment, Inc. v. Cudmore*, 312 N.W.2d 347 (N.D.1981); see also Section 41–02–31, N.D.C.C. [Uniform Commercial Code § 2–314 Comment 13]. Ordinarily the determination of whether or not damages were proximately caused by a breach of warranty is a question of fact. *A.T.S. Laboratories, Inc. v. Cessna Aircraft Co.*, 59 Ohio App.2d 15, 391 N.E.2d 1041 (Ohio Ct.App.1978); *General Supply and Equipment Co., Inc. v. Phillips*, 490 S.W.2d 913 (Tex.Civ.App.1972); *Cf. Linington v. McLean County*, 161 N.W.2d 487 (N.D.1968) [proximate cause in negligence action was question of fact unless evidence was such that reasonable men could draw but one conclusion therefrom].

■ Whether or not the evidence is sufficient to create a question of fact for the trier of fact is a question of law to be decided by the trial court. *Okken v. Okken*, 325 N.W.2d 264 (N.D.1982). If the trial court determines that the evidence does not present a question of fact for the jury, the party moving for a judgment notwithstanding the verdict is entitled to a judgment on the merits as a matter of law and only then should a motion for a judgment notwithstanding the verdict be granted. *Okken v. Okken, supra.*

In *Okken v. Okken, supra*, 325 N.W.2d at 267, we set out the following standard to be used by this Court and trial courts for determining whether the granting of a judgment notwithstanding the verdict is appropriate:

"In determining if the evidence is sufficient to create an issue of fact, and hence in determining if judgment n.o.v. should be granted, the trial court must employ a rigorous standard with a view toward preserving verdicts. *Riebe v. Riebe*, 252 N.W.2d 175 (N.D.1977). The test is whether or not the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but *one* conclusion as to the verdict about which there can be no reasonable difference of opinion. *Staiger v. Gaarder*, 258 N.W.2d 641 (N.D.1977). In employing this standard, the trial judge is not free to consider the weight of the evidence or to judge the credibility of witnesses; on the contrary, he is required to accept the truth of the evidence presented by the party opposing the motion and the truth of all reasonable inferences from that evidence which support the jury verdict. *Riebe, supra*, 252 N.W.2d at 177; 9 Wright & Miller, *Federal Practice and Procedure*, Civil 2524. The trial court must give proper deference to the jury's evaluation of the evidence and its judgment of the credibility of witnesses under a motion for judgment n.o.v." [Emphasis in original.]

Initially, we do not believe that the jury's answers to the special verdict form necessarily indicates a misconception of proxi-

---

**3.** That judgment also awarded Hatton Commodities recovery against Greeley and Powell jointly and severally in the amount of $18,639.06, and Greeley recovery against Powell in the amount of $10,861.08. These dollar amounts represent the costs, disbursements, and attorney fees from the first jury trial. See fn. 1.

mate cause. Question number three of the special verdict form specifically required the jury to find the amount of Hagert Farms' damages for lost crops and incidental expenses *regardless* of whether or not the jury found a breach of express or implied warranty and *regardless* of whether or not the jury found the breach of warranty was a proximate cause of Hagert Farms' damages. The jury's answers in this respect were precisely what the special verdict form requested.

Powell's theory at trial was that Hagert Farms' damages were caused by the manner in which the bean fields were managed. Powell's theory was, in part, that the overhead center pivot irrigation system and amount of irrigation and fertilization used by Hagert Farms weakened the plants, thereby making it easier for bacterial pathogens to infect the plants and to spread the disease to other plants. Powell presented evidence at trial which, if believed, indicated that all seeds have bacterial pathogens which do not always manifest themselves as a disease in the plants; bacterial pathogens can reside on the plant's surface without causing disease or harm to the plant; the environment, and particularly the amount and type of irrigation, has a major impact on whether or not the plants become predisposed and the bacterial pathogens infect the plant; and conditions that are favorable to a high yield are also the same conditions that increase the risk of the manifestation of disease in the plants. There was also evidence presented at trial that the corners of the 70 acre field had not received irrigation and that the plants in those corners were not infected with halo blight. Thus, Powell contended that the halo blight pathogen in the seeds would not have manifested itself in the plants except for the amount of fertilization and amount and type of irrigation, and that those factors were beyond its control and were the proximate cause of Hagert Farms' damages.

■ After a careful review of the record and keeping in mind that we must accept all reasonable inferences which support the jury's verdict, we conclude that there was sufficient evidence for the jury to find that the breach of warranty was not the proximate cause of the damages sustained by Hagert Farms. Accordingly, we reverse the trial court's order granting Hagert Farms' motion for judgment notwithstanding the verdict and the judgment notwithstanding the verdict.

In *Okken v. Okken, supra,* 325 N.W.2d at 269, we discussed the standard to be employed by trial courts in ruling on a motion for a new trial:

"If ... the motion is for a new trial, the trial judge has a certain amount of discretion in viewing the evidence. Here, the trial court may, within limits, weigh the evidence and judge the credibility of witnesses.... In particular, when a motion for a new trial is made and the reason given in support of the motion is that there was insufficient evidence to justify the verdict, the moving party is asking the trial court to decide whether or not the verdict is against the weight of the evidence. And in making this decision, the trial judge must weigh the evidence ... he must consider that evidence which supports the verdict equally with that evidence which challenges the verdict. In short, when ruling on a motion for a new trial, the trial judge may consider *all* the evidence." [Emphasis in original.]

■ In accordance with that standard, a motion for a new trial is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion. *Okken v. Okken, supra.* We have defined an abuse of discretion as arbitrary, unreasonable, or unconscionable conduct. *Wall v. Penn. Life Ins. Co.,* 274 N.W.2d 208 (N.D.1979). Furthermore, because the denial of a new trial ends the case, whereas the granting of a motion for a new trial results in the trial of the case to another jury, we require a stronger showing that the trial court abused its discretion in granting a motion for a new trial before we will reverse the

granting of the motion. *Okken v. Okken, supra.*

 After a careful review of the record and considering the less rigorous standard which permits the trial court, within limits, to consider all the evidence and judge the credibility of witnesses, we conclude that the trial court did not abuse its discretion in conditionally granting Hagert Farms' motion for a new trial. Accordingly, we affirm the trial court's decision to conditionally grant Hagert Farms' motion for a new trial.

On cross-appeal, Hagert Farms contends that our first decision on the previous appeal required a retrial only on the issue of liability and, if liability was determined in its favor on retrial, then damages would be in the amount found by the first jury.

Rule 35(b), N.D.R.App.P., gives this Court the authority to limit issues on a retrial and provides, in pertinent part, as follows:

> *"(b) Civil Appeals; Power of Court on Review.* Upon an appeal from a judgment or order, the supreme court may reverse, affirm, or modify the judgment or order as to any and all of the parties, *and if necessary or proper may order a new trial of the entire cause or of some specific issue or issues,* and if the appeal is from a part of the judgment or order, may reverse, affirm, or modify it as to the part appealed from." [Emphasis added.]

We have specifically remanded cases with instructions for a new trial on the question of damages alone, *Glatt v. Bank of Kirkwood Plaza,* 383 N.W.2d 473 (N.D.1986); *Johnson v. Monsanto Co.,* 303 N.W.2d 86, 95 (N.D.1981); *Vallejo v. Jamestown College,* 244 N.W.2d 753, 756 (N.D.1976), and on the question of liability alone. *Regent Cooperative Equity Exchange v. Johnston's Fuel Liners, Inc.,* 130 N.W.2d 165 (N.D.1964). However, in the prior appeal we said: "The jury was improperly instructed in the special verdict form which permitted an improper recovery and a new trial is required.... Judgment and order denying new trial reversed; case remanded." *Hagert v. Hatton Commodities, Inc., supra,* 350 N.W.2d at 595–596. This language did not specifically limit the issues on retrial to liability and thus, this case is distinguishable from *Regent Cooperative Equity Exchange v. Johnston's Fuel Liners, Inc., supra.* In the absence of any limiting language, the retrial was on all issues.

For reasons stated in this opinion, we reverse the order granting the judgment notwithstanding the verdict, affirm the order granting a new trial, and the case is remanded for a new trial with costs on appeal to be awarded to Powell.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.