**Myron OKKEN, Plaintiff and Appellant,**

v.

**Martha OKKEN Estate, Defendant and Appellee.**

**Civ. No. 10190.**

Supreme Court of North Dakota.

Oct. 22, 1982.

Charles L. Chapman of Chapman & Chapman, Bismarck, for plaintiff and appellant.

Robert V. Bolinske of Zuger & Bucklin, Bismarck, for defendant and appellee.

VANDE WALLE, Justice.

Myron Okken appealed from a judgment of the district court of Grant County granting a motion for judgment notwithstanding the verdict and conditionally granting a new trial. We reverse in part and affirm in part.

Myron Okken and his brother, Clifford, are the two surviving children of Martha Okken, who died on June 18, 1980. Martha left a will dated July 11, 1975, in which she named Clifford sole beneficiary. Doris Okken, Clifford's wife, was named contingent beneficiary in the event Clifford did not survive Martha; and Roxanne and Annette Okken, the children of Clifford and Doris, were named contingent beneficiaries in the event neither Clifford nor Doris survived Martha.

Clifford applied in county court for informal probate of the will and for the appointment of himself as personal representative of Martha's estate. Subsequently, Myron filed a petition with the county court for a formal adjudication of intestacy and for the appointment of himself as personal representative of Martha's estate. In the petition, Myron objected to the informal probate of Martha's will and advanced as reasons in support of the objection that Martha's execution of the will was not her free and voluntary act; in short, that it was the result of undue influence by Clifford and members of his family.

The county court held a hearing on Clifford's application for informal probate and at the same time heard Myron's objections to the informal probate of Martha's will. On the basis of evidence presented at the hearing, the court issued an order directing that Martha's will be admitted to probate. Myron appealed from the decision of the county court to the district court and demanded a trial by jury. A trial was had to a jury with the only issue being whether or not Clifford or members of his family exercised undue influence over Martha in the execution of her will. The jury found that

there had been undue influence, and, on the basis of this finding, the trial judge issued an order denying the probate of Martha's will.

In an effort to have the jury verdict set aside, Clifford moved the district court for judgment notwithstanding the verdict (judgment n.o.v.) and, in the alternative, for a new trial on the ground that the evidence presented at trial was insufficient to support the jury's finding of undue influence. The trial court in a memorandum opinion granted both motions; it granted the motion for judgment n.o.v. for the reason that "there is absolutely no evidence to justify the overturning of this Will on the grounds of undue influence," and it conditionally granted the motion for a new trial—in the event we reverse the judgment n.o.v.—for the reason that "there is insufficient evidence to justify the verdict of the jury." This procedure is in accordance with Rule 50, N.D.R.Civ.P.

In his appeal from the judgment of the district court Myron claims that the trial court improperly granted Clifford's motion for judgment n.o.v. because

(1) Clifford did not move for a directed verdict at the close of the evidence offered by Myron, and

(2) There was sufficient evidence offered by Myron to support the jury's verdict.

Myron also claims that the trial court erred in conditionally granting Clifford's alternative motion for a new trial because here, too, the evidence was sufficient to support the jury's verdict.

## I. MOTION FOR A DIRECTED VERDICT

■ Rule 50(b), N.D.R.Civ.P., requires that a motion for a directed verdict precede a motion for judgment notwithstanding the verdict. At the close of Myron's evidence, Clifford's attorney moved to dismiss the action against Clifford. Myron now argues that because Clifford's attorney did not use the words "directed verdict" in his motion, the motion did not constitute a motion for a directed verdict, and therefore the trial

court erred in granting the motion for judgment n.o.v.

Our review of the record shows that the motion to dismiss was made at the time a motion for a directed verdict would be made, and that the motion was treated as a motion for a directed verdict by counsel for both parties as well as by the trial court. We have held in similar circumstances that a motion to dismiss is equivalent to a motion for a directed verdict. *Christensen v. Farmers State Bank of Richardton,* 157 N.W.2d 352 (N.D.1968). There are no significant differences between this case and *Christensen* which would compel a different conclusion here, and accordingly we hold that the motion to dismiss was tantamount to a motion for a directed verdict and that the Rule 50(b) requirement in question has been satisfied in this case.

## II. MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

In his memorandum opinion granting Clifford's motion for judgment notwithstanding the verdict, the trial judge stated that there was no evidence presented at trial from which the jury could have concluded that Clifford or members of his family exercised undue influence over Martha in the execution of her will.

▬ The existence or nonexistence of undue influence is a question of fact; and in a trial by jury, it is a question of fact for the jury. *Matter of Estate of Thomas,* 290 N.W.2d 223 (N.D.1980); *Matter of Estate of Wagner,* 265 N.W.2d 459 (N.D.1978). When a party moves for judgment n.o.v. on the ground that the evidence is insufficient to show undue influence, the party is, in effect, claiming that the evidence is insufficient to create a question of fact for the jury. And whether or not the evidence is sufficient to create a question of fact for the jury is itself a question of law to be decided by the trial court. See *South v. National R.R. Passenger Corp.,* 290 N.W.2d 819 (N.D.1980); 9 Wright & Miller, *Federal Practice and Procedure,* Civil 2524. If the trial court determines that the evidence does not present a question of fact for the

jury, the moving party is entitled to judgment on the merits as a matter of law [see *South, supra,* 290 N.W.2d at 842], and only then should the motion for judgment n.o.v. be granted.

▬ In determining if the evidence is sufficient to create an issue of fact, and hence in determining if judgment n.o.v. should be granted, the trial court must employ a rigorous standard with a view toward preserving verdicts. *Riebe v. Riebe,* 252 N.W.2d 175 (N.D.1977). The test is whether or not the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but *one* conclusion as to the verdict about which there can be no reasonable difference of opinion. *Staiger v. Gaarder,* 258 N.W.2d 641 (N.D.1977). In employing this standard, the trial judge is not free to consider the weight of the evidence or to judge the credibility of witnesses; on the contrary, he is required to accept the truth of the evidence presented by the party opposing the motion and the truth of all reasonable inferences from that evidence which support the jury verdict. *Riebe, supra,* 252 N.W.2d at 177; 9 Wright & Miller, *Federal Practice and Procedure,* Civil 2524. The trial court must give proper deference to the jury's evaluation of the evidence and its judgment of the credibility of witnesses under a motion for judgment n.o.v.

▬ In order to determine whether or not the trial court erred in granting Clifford's motion for judgment n.o.v., we must examine the trial record and then apply the same standard that the trial court was required to apply initially. See *Riebe, supra,* 252 N.W.2d at 177. Turning our attention to the record of the trial, we discover after careful consideration that we cannot agree with the trial court's determination that there was insufficient evidence for the jury to find undue influence.

At the close of the evidence, the trial court instructed the jury that before it could find that Martha's will was the result of undue influence, it must first find by the greater weight of the evidence that (1) the

testator was subject to undue influence; (2) the opportunity to exercise it existed; (3) there was a disposition to exercise it; and (4) the result appears to be the effect of such influence. The trial court further instructed the jury:

"To be undue the influence must operate at the time the will is made and must dominate and control the making of the will. The influence must be such as to make the will express the purpose and intent of the person exercising the influence and not the purpose and intent of the testator."

These instructions were given without objection and, in fact, correspond with the general rule defining the elements necessary to establish undue influence that we have adopted in our case law. *In re Burris' Estate,* 72 N.W.2d 884 (N.D.1955). See also *Kronebusch v. Lettenmaier,* 311 N.W.2d 32 (N.D.1981).

It is impossible for us to recreate the exact reasoning process that led the jury to conclude from the evidence that Martha Okken was unduly influenced in making her will. However, guided as we are in our examination of the trial transcript by the rule that when we review the granting of a motion for judgment n.o.v., we must accept the truth of the evidence and all reasonable inferences therefrom which support the jury's verdict, we are satisfied that the jury could reasonably find from the evidence the existence of undue influence as defined above.

To begin with,[1] our review of the evidence in the light most favorable to the jury verdict shows that on or about June 14, 1975, Clifford and Doris came from their home in Oregon to visit Martha in North Dakota; that about ten days later Martha transferred three quarters of land to Clifford, reserving a life estate in herself; and that approximately two weeks after that Martha made a will in which she named Clifford as sole beneficiary. There is also evidence which shows that Martha did not understand the legal effect of the transfer of the three quarters of land to Clifford, and that when she discovered the true effect of the transfer, she commenced legal proceedings against Clifford to have the three quarters reconveyed to her. Martha's attorney in this action to recover her land was also the attorney who had prepared her will, and he testified that at the same time that Martha instituted legal proceedings against Clifford, she expressed a desire to have her will changed. Finally, there was direct testimony from Myron, which was received into evidence without objection, that Martha had told him

(1) That Myron's father and Myron's brother, Clifford, had "pushed" her into making a will;

(2) That Clifford and Doris told Martha they needed to have the will in order to receive other deeds to land; and

(3) That Clifford had used Martha's fear of being put into a nursing home to prevent her from changing her will and from continuing the action to recover the three quarters of land conveyed to Clifford.

Clifford now argues on appeal that there is absolutely no basis for the jury's verdict; he argues, in essence, that the jury employed speculation and conjecture in arriving at its verdict. Recognizing the fine line between speculation and reasonable inference, we cannot say, when viewing the circumstantial evidence and direct testimony of Myron in the light most favorable to the verdict, that the jury's verdict was the result of speculation and not the result of reasonable inference, or, to put it another way, we do not believe that the evidence, when viewed thus favorably, compels but one conclusion with which no reasonable person could differ. To the contrary, if we accept as true the evidence outlined above and the reasonable inferences drawn therefrom, and do not consider conflicting evidence which is against the verdict, we believe that a reasonable person could conclude that the requirements for finding undue influence had been satisfied in this

---

1. What follows is not a complete restatement of the evidence presented at trial from which the jury could conclude that undue influence existed in the execution of Martha's will.

case. Therefore, we reverse the judgment notwithstanding the verdict.

### III. MOTION FOR A NEW TRIAL

With his motion for judgment notwithstanding the verdict, Clifford moved in the alternative for a new trial on the grounds that the evidence was insufficient to justify the jury verdict and that the verdict was contrary to law. Rule 59(b)(6), N.D.R. Civ.P. The trial court conditionally granted the motion for a new trial, in the event that this court should reverse the judgment n.o.v., in the belief that the evidence was insufficient to sustain the jury's verdict. We affirm this part of the trial court's judgment.

■ The reason we may conclude upon an examination of the evidence presented at trial that the trial court erred in granting the motion for judgment n.o.v. but did not err in granting the motion for a new trial is that the trial court's standard for granting judgment n.o.v. is different from its standard for granting a new trial [*Nokota Feeds, Inc. v. State Bank of Lakota*, 210 N.W.2d 182, 187 (N.D.1973)], and because our standard for reviewing the granting of judgment n.o.v. is different from our standard for reviewing the granting of a new trial [see *Riebe, supra*, 252 N.W.2d at 177; *Cook v. Stenslie*, 251 N.W.2d 393, 395 (N.D. 1977)].

■ On a motion for judgment n.o.v., the trial judge has no discretion in viewing the evidence. See *Nokota Feeds, supra*, 210 N.W.2d at 187; 9 Wright & Miller, *Federal Practice and Procedure*, Civil 2531. He must admit the truth of all evidence in favor of the verdict and the truth of all reasonable inferences from that evidence. He cannot weigh the evidence, and he cannot judge the credibility of witnesses. *Nokota Feeds, supra*, 210 N.W.2d at 187. If, on the other hand, the motion is for a new trial, the trial judge has a certain amount of discretion in viewing the evidence. Here, the trial court may, within limits, weigh the evidence and judge the credibility of witnesses. *Cook, supra*, 251 N.W.2d at 395; 9 Wright & Miller, *Federal*

*Practice and Procedure*, Civil 2531. In particular, when a motion for a new trial is made and the reason given in support of the motion is that there was insufficient evidence to justify the verdict, the moving party is asking the trial court to decide whether or not the verdict is against the weight of the evidence. And in making this decision, the trial judge must weigh the evidence [*Wrangham v. Tebelius*, 231 N.W.2d 753, 756 (N.D.1975)]; he must consider that evidence which supports the verdict equally with that evidence which challenges the verdict. In short, when ruling on a motion for a new trial, the trial judge may consider *all* the evidence. See *Wrangham, supra*, 231 N.W.2d at 756.

■ We have consistently held, in accordance with the standard for granting a new trial, that a Rule 59(b) motion for a new trial is addressed to the sound discretion of the trial court, and a trial court's decision to grant a new trial will not be disturbed on appeal absent a showing of a manifest abuse of discretion. *Cook, supra*, 251 N.W.2d at 395.

■ In relation to our role in reviewing a trial court's granting of a new trial, we are mindful of the warning given in *Cook* [251 N.W.2d at 395] that

"The power of the trial court to exercise its discretion on this motion must be clearly distinguished from our power on appeal, which is limited to a determination of whether grant of the motion was an abuse of discretion."

An abuse of discretion, in turn, occurs wherever the trial court acts unreasonably, arbitrarily, or unconscionably in granting a motion for a new trial. *Wall v. Penn. Life Ins. Co.*, 274 N.W.2d 208, 218 (N.D.1979). Furthermore, because the denial of a new trial brings the case to an end, whereas the granting of a new trial merely results in the trial of the case to another jury, we require a strong showing that the trial court abused its discretion in granting the motion for a new trial before we will reverse the granting of the motion. *Cook, supra*, 251 N.W.2d at 396.

Using this much more lenient standard of review, which gives due deference to the trial court's margin of discretion in deciding a motion for a new trial, and keeping in mind that the trial judge on a motion for a new trial is not required to accept the truth of the evidence which supports the verdict, but may instead consider all the evidence and judge the credibility of witnesses, we conclude that the trial judge did not act in an unreasonable, arbitrary, or unconscionable manner, and hence did not abuse his discretion, in granting Clifford's alternative motion for a new trial.

Our review of the trial record shows that in addition to the evidence favorable to the verdict, some of which was previously recited, there is considerable evidence unfavorable to the verdict: namely,[2]

(1) From the time that Martha was allegedly "pushed" into making her will until the time of her death, Martha had five years within which she could have changed her will, but she never changed it.

(2) Even at the time Martha was fighting to get her land back from Clifford, she did not change her will.

(3) Clifford and Doris were not in the State at the time Martha made her will.

(4) Clifford and Doris testified that they at no time discussed Martha's will with her and did not even know the contents of the will until just before Martha's death.

(5) The attorney who drafted Martha's will and who also represented Martha in the legal action to recover her land from Clifford testified that he was certain Martha understood the contents and consequences of her will; furthermore, he acknowledged to the court that when Martha signed her will in his office he was perfectly satisfied that she was signing out of her own free choice.

(6) One of the individuals who witnessed Martha's signature on the will affirmed that Martha understood what she was doing when she signed her will.

(7) Article VII of the will states that Martha's failure to make any provision for Myron in her will *is* intentional.

(8) Although Myron testified that Doris often helped Martha with her business affairs and although Myron's attorney sought to show that Martha was generally dependent on others for help in her business affairs, Doris as well as Martha's brother, her sister, and her nephew all testified that Martha virtually never came to them for advice on business matters.

(9) The opinion of all her family who testified at the trial, including Myron, was that Martha was a strong-willed, independent person.

A basic comparison of the evidence for and against the verdict discloses that the evidence for the verdict (1) was offered primarily by one person, who was an interested party, i.e., Myron, and (2) consisted essentially of testimony that Martha made a statement to Myron that she was, in effect, unduly influenced in making her will; in contrast, the evidence against the verdict (1) was offered by seven persons, most of whom were disinterested parties, and (2) consisted essentially of testimony that Martha knew and understood the contents of her will, that she deliberately disinherited Myron, that her signature on the will was the result of her own free act, and that she had ample time to change her will before she died but never did.

It has long been the view of this court that

"When it appears to the trial court that the verdict is against the weight of the evidence, it is the duty of that court to set aside the verdict and to grant a new trial." *Wrangham, supra,* 231 N.W.2d at 756.

Considering the elements necessary to establish the existence of undue influence and noting the difference in the amount, the type, and the source of the evidence for and

---

**2.** What follows is not a complete restatement of the evidence presented at trial which supports the conclusion that Martha was not unduly influenced in the execution of her will.

against the verdict, we cannot say that the trial court acted in an unreasonable, arbitrary, or unconscionable manner in deciding that the verdict was against the clear weight of the evidence. Myron simply has not met his burden to show that the trial court abused its discretion in granting Clifford's motion for a new trial.

In conclusion, while we determine that there is sufficient evidence when viewed in the light most favorable to the verdict for the jury to find the existence of undue influence, we cannot determine that the trial court abused its discretion in deciding that the verdict was against the weight of the evidence and in granting the motion for a new trial. Consequently, we reverse the granting of the motion for judgment notwithstanding the verdict, and we affirm the granting of the motion for a new trial.

ERICKSTAD, C.J., PEDERSON and SAND, JJ., and JOHN O. GARAAS, District Judge, concur.

GARAAS, District Judge, sitting in place of PAULSON, J., disqualified.