Rudy and Evelyn FRONK, Plaintiffs and Appellants,

v.

Robert C. MEAGER, Jr., an individual, and the City of Harvey, a municipal corporation, Defendants and Appellees.

Civ. No. 870085.

Supreme Court of North Dakota.

Dec. 29, 1987.

Bickle, Coles & Snyder, Bismarck, for plaintiffs and appellants; argued by Robert J. Snyder.

Fleck, Mather, Strutz & Mayer, P.C., Bismarck, and Tebelius Law Firm, Harvey, for defendants and appellees; argued by Steven A. Storslee. Appearance by Mark Tebelius.

GIERKE, Justice.

Rudy and Evelyn Fronk appeal from a judgment which dismissed with prejudice their amended complaint and awarded a judgment for costs and disbursements to the defendants. We affirm.

At approximately 8 o'clock on the evening of June 28, 1984, in the city of Harvey, North Dakota, the plaintiffs, Evelyn and Rudy Fronk (Fronks), went out to dinner with a number of friends. Mr. Fronk testified that he had two or three drinks during the course of dinner which lasted a couple of hours. After dinner, the Fronks went to another couple's home for the purpose of playing cards. Later that evening, the Fronks went to the VFW Club where Mr. Fronk testified he had two more drinks.

As Mr. Fronk was driving his automobile home from the VFW Club at approximately 12:30 a.m., he noticed that a car was following them, but could not tell what kind of car it was. After turning a corner close to their home, the car behind the Fronks turned on police emergency lights and the Fronks' car was pulled over.

The car following the Fronks turned out to be a police car driven by the defendant,

Robert Meager, a police officer with the city of Harvey. Officer Meager testified that he noticed the car weaving within its own lane and observed that the car made a right turn, and in so doing, swerved too far to the left. At this point, Officer Meager activated his emergency lights and pulled the vehicle over. From this point on, the versions of Officer Meager and Mr. Fronk as to the facts of the case vary substantially.

Officer Meager's version is that after pulling the vehicle over he approached the driver's side of the vehicle and observed Mr. Fronk who smelled of alcohol. Then, Officer Meager had Mr. Fronk take a seat in the patrol car while he radioed in Mr. Fronk's license number to the dispatcher. Prior to receiving the report on the license number, Officer Meager had Mr. Fronk exit the patrol car and perform a number of field sobriety tests which Mr. Fronk failed. He then told Mr. Fronk that he was under arrest for D.U.I.

Officer Meager's version continues that Mr. Fronk said that he was not going to be arrested and that he would take his driver's license back if Officer Meager did not give it back. At that point, Officer Meager called for back-up and got his PR–24 police baton from the patrol car. Officer Meager requested Mr. Fronk to get into the back of the patrol car. Mr. Fronk refused and proceeded to walk away. Officer Meager then told Mr. Fronk to stop. At that point, Officer Meager performed several spin maneuvers with the PR–24 baton.[1] Mr. Fronk moved forward and started to take a swing at Officer Meager.[2] In response, Officer Meager crouched down and struck Mr. Fronk in the knee area with his PR–24 baton by a maneuver known as a "power chop." Mr. Fronk fell to the ground after the blow.

Mr. Fronk's version differs in that after being stopped he exited his vehicle and met Officer Meager halfway between the two vehicles. Mr. Fronk admits performing a number of physical tests, but denies that Officer Meager informed him that he was being placed under arrest for D.U.I.

Mr. Fronk testified that he attempted to talk Officer Meager out of taking him in and that Officer Meager became very agitated. At some point, Officer Meager pulled something from his belt, the identity of which Mr. Fronk did not know at the time. Mr. Fronk stated that Officer Meager, while spinning the unknown device, got closer and closer and when Mr. Fronk leaned back to keep away, he stumbled, at which point Officer Meager dropped down and hit Mr. Fronk in the knee. Mr. Fronk fell to the ground. At this point in time, Mrs. Fronk jumped out of the car and started yelling at Officer Meager. Mrs. Fronk's version of the event is essentially the same as that of her husband's.

Shortly thereafter, the back-up officer arrived at the scene. Also, within a few minutes, the ambulance arrived and Mr. Fronk was taken to the hospital where he was seen by Dr. Nyhus. Dr. Nyhus examined Mr. Fronk and determined that his knee cap was fractured. Mr. Fronk was subsequently transferred to a Bismarck hospital for treatment.

After Mr. Fronk arrived in Bismarck, he was examined by Dr. Dahl. An immediate operation was performed on Mr. Fronk's knee which showed that half of his patella had been shattered into small pieces. The pieces were too small to save and therefore were removed. Dr. Dahl's prognosis was that Mr. Fronk would never regain the full use of his right leg again.

After his arrest, Mr. Fronk was charged with the offense of driving under the influ-

---

1. Officer Meager testified that he performed a number of maneuvers with the PR–24 baton, including three figure-eights, a reverse spin, two forward spins, a spin to the right, and a spin to the left.

2. The following morning Officer Meager consulted a chiropractor for injuries sustained in the altercation with Mr. Fronk. The chiropractor testified that Officer Meager was diagnosed and treated for a condition consistent with a traumatic blow to the left side of the head or neck.

ence of alcohol and was found guilty of that offense in municipal court. Mr. Fronk appealed his conviction to county court for a trial de novo. In county court, Mr. Fronk made a motion to suppress the blood alcohol test results on the basis that Officer Meager lacked probable cause to stop the Fronk vehicle. In denying the motion to suppress, the county court concluded that the initial stop of the Fronk vehicle was justified. On June 13 and 14, 1985, a jury trial was conducted and Mr. Fronk was found guilty of the charge of driving under the influence of alcohol.

On October 19, 1984, the Fronks commenced the present action against Officer Meager and the city of Harvey, the latter being named as the employer of Officer Meager pursuant to Sections 32–12.1–03 and 32–12.1–04 of the N.D.C.C.[3] The Fronks sought damages for physical pain and suffering, mental and emotional distress, permanent disability, economic loss, loss of consortium by Mrs. Fronk, and punitive damages.

A jury trial was commenced on January 27, 1987. At the beginning of the trial, the court in its opening instructions to the jury stated, "that the validity or the lawfulness of the arrest and the result of any criminal charges resulting from that arrest are not in issue in this case. It has been previously determined that, as a matter of law, the arrest of Mr. Fronk was lawful." At trial, Fronk attempted to introduce into evidence a videotape of the basic instruction course

---

**3.** The liability of political subdivisions is set forth in Section 32–12.1–03, N.D.C.C., which provides in part:

*"32–12.1–03. Liability of political subdivisions—Limitations.*

1. Each political subdivision shall be liable for money damages for injuries when the injuries are proximately caused by the negligence or wrongful act or omission of any employee acting within the scope of the employee's employment or office under circumstances where the employee would be personally liable to a claimant in accordance with the laws of this state, or injury caused from some condition or use of tangible property, real or personal, under circumstances where the political subdivision, if a private person, would be liable to the claimant."

In addition, the political subdivision is required to be named as a party to the action pursuant to Section 32–12.1–04, N.D.C.C., which provides as follows:

*"32–12.1–04. Political subdivision to be named in action—Personal liability of employees—Indemnification of claims and final judgments.*

1. An action for injuries proximately caused by the alleged negligence, wrongful act, or omission of an employee of a political subdivision occurring within the scope of the employee's employment or office shall be brought against the political subdivision. If there is any question concerning whether the alleged negligence, wrongful act, or omission occurred within the scope of employment or office of the employee, the employee may be named as a party to the action and the issue may be tried separately. A political subdivision must defend the employee until the court determines the employee was acting outside the scope of the employee's employment or office.

2. An employee shall not be personally liable for money damages for injuries when the injuries are proximately caused by the negligence, wrongful act, or omission of the employee acting within the scope of the employee's employment or office.

3. No employee may be held liable in the employee's personal capacity for acts or omissions of the employee occurring within the scope of the employee's employment unless the acts or omissions constitute reckless or grossly negligent conduct, or willful or wanton misconduct. An employee may be personally liable for money damages for injuries when the injuries are proximately caused by the negligence, wrongful act, or omission of the employee acting outside the scope of the employee's employment or office. The plaintiff in such an action bears the burden of proof to show by clear and convincing evidence that the employee was either acting outside the scope of the employee's employment or office or the employee was acting within the scope of employment in a reckless, grossly negligent, willful, or wanton manner. Employees may be liable for punitive or exemplary damages. The extent to which an employee may be personally liable pursuant to this section and whether the employee was acting within the scope of employment or office shall be specifically stated in a final judgment.

4. A political subdivision shall indemnify and save harmless an employee for any claim, whether groundless or not, and final judgment for any act or omission occurring within the scope of employment or office of the employee. The indemnification shall be made in the manner provided by this chapter and shall be subject to the limitations herein."

for the PR–24 police baton. The trial court refused to admit the videotape into evidence.[4] At the close of the case, the jury was given a special verdict form with interrogatories in which the operative language for finding liability was whether unreasonable or unnecessary force was used in effecting the arrest. The jury returned a verdict denying liability after finding that the force used was not unreasonable or unnecessary.

On February 6, 1987, Fronk made a motion for a new trial and an alternative motion for a judgment notwithstanding the verdict. Both motions were denied by the district court on February 7, 1987. On February 25, 1987, an amended judgment was entered which dismissed with prejudice Fronk's claim against the defendants, and awarded the defendants a judgment for their costs and disbursements. This appeal followed.

Fronk raises three issues on appeal. Initially, Fronk asserts that the trial court erred in instructing the jury that the arrest was lawful. Next, Fronk asserts that the trial court erred in refusing to allow as evidence Fronk's exhibit P–10 which was a videotape of the basic instruction course for the PR–24 police baton. Finally, Fronk contends that the verdict was unsupported by the evidence and therefore the trial court erred in denying his motion for a new trial or judgment notwithstanding the verdict.

Fronk argues that the trial court committed reversible error in instructing the jury that his arrest was lawful. Fronk contends that the effect of the instruction was to tell the jury that the trial court had concluded the Fronks were not telling the truth re-

garding the events leading to the arrest. Thus, Fronk asserts that the instruction regarding the lawfulness of the arrest confused the jury and damaged Fronk's credibility and thereby was erroneous and extremely prejudicial.

■ When a portion of a jury instruction is assigned as error, the reviewing court must consider and construe the instructions as a whole. *Andrews v. O'Hearn,* 387 N.W.2d 716, 729 (N.D.1986); *Wasem v. Laskowski,* 274 N.W.2d 219, 222 (N.D. 1979); *Eriksen v. Boyer,* 225 N.W.2d 66, 74 (N.D.1974). If, when viewed in its entirety, the instruction fairly and correctly advises the jury as to the law which pertains to the essential issues then an isolated improper statement will not be considered prejudicial error. *Benedict v. St. Luke's Hospitals,* 365 N.W.2d 499, 505 (N.D.1985); *Schwartz v. Ghaly,* 318 N.W.2d 294, 301 (N.D.1982); *Welken v. Conley,* 252 N.W.2d 311, 317 (N.D.1977); *Willert v. Nielsen,* 146 N.W.2d 26, 29 (N.D.1966).

■ In the instant case, the transcript indicates that the court gave general instructions to the jury at the outset of the trial.[5] The trial court in its opening instruction to the jury included a statement that:

"The Court cautions the jury that the validity or the lawfulness of the arrest and the result of any criminal charges resulting from that arrest are not in issue in this case. It has been previously determined that, as a matter of law, the arrest of Mr. Fronk was lawful. Therefore, the jury may not speculate or form any judgment as to those issues."

Thus, the instruction complained of was included in the opening instructions to the jury.

---

**4.** Fronk offered into evidence exhibit P–10, a videotape of the basic instruction course for the PR–24 baton. An objection was made by Meager as to the introduction of the exhibit into evidence. In sustaining the objection, the trial court stated:

"The problem I have evidentiarywise with this particular exhibit is, one, whether it was or was not seen by this officer has not been substantiated. Two, I think that it may or may not set a standard other than that which

this Court has instructed the jury as to what the standard of law is to the officer's conduct here. In that regard, and for those reasons, the objection is sustained."

**5.** The transcript indicates that the trial court read the first seventeen pages of the instructions to the jury at the beginning of the trial before opening statements of counsel were made.

The opening instructions related to such items as the duties of jurors, the trial procedure, the definition of evidence and the distinction between direct and circumstantial evidence, the effect of rulings by the judge, the elements of proof and an explanation of burden of proof. The central issue in the instant case was whether unnecessary or unreasonable force was used in effecting the arrest of Mr. Fronk. Thus, the entire context of the instructions was to explain the legal principles on the use of force by a police officer in effecting an arrest.

After reviewing the effect of the instructions as a whole, we believe that the instructions fairly and correctly advise the jury as to the law which pertains to the essential issues. We therefore conclude that the giving of the isolated instruction regarding the lawfulness of the arrest was not error.

■ Fronk next argues that the trial court committed reversible error in refusing to allow as evidence exhibit P–10, which was a videotape of the basic instruction course for the PR–24 police baton.

Rule 61 of the North Dakota Rules of Civil Procedure provides that no error in the admission or exclusion of evidence or defect in any ruling is ground for granting a new trial unless refusal to take such action appears to be "inconsistent with substantial justice." *See also, Merrill Iron & Steel v. Minn–Dak Seeds, Ltd.,* 334 N.W.2d 652, 658 (N.D.1983); *Klein v. Harper,* 186 N.W.2d 426, 434 (N.D.1971).

The videotape was offered by Mr. Fronk to show the maneuvers taught Officer Meager during the basic instruction course on the PR–24 baton. Furthermore, the videotape was offered to show that the maneuver used by Officer Meager was not designed to be used against a part of the body as sensitive as the knee.

In the instant case, evidence was presented which provided in-court demonstrations on the various maneuvers of the PR–24 baton for the jury.[6] Further, other evidence was admitted which suggested that the technique Officer Meager used against the knee of Mr. Fronk was inappropriate and unauthorized.

We believe that no substantial right of Mr. Fronk was unfairly prejudiced by the exclusion of the evidence in question, because other relevant evidence was admitted which showed the various maneuvers of the PR–24 baton and it was also alleged through other evidence that the wrong technique was used against the knee. Accordingly, we conclude that the exclusion of the evidence, if error at all, was harmless error and does not require reversal of the district court's judgment.

Fronk's final argument is that the trial court erred in denying his motion for a new trial or judgment notwithstanding the verdict.

■ In *Okken v. Okken,* 325 N.W.2d 264, 269 (N.D.1982), this Court stated that the trial court's standard for granting judgment notwithstanding the verdict is different from the standard for granting a new trial and the standard of appellate review also differs. When reviewing a ruling on a motion for a judgment notwithstanding the verdict, the appellate court applies the same standard as the trial court initially applied. *Okken v. Okken, supra* at 267. However, when reviewing a ruling on a motion for a new trial the appellate court determines whether there was an abuse of discretion by the trial court. *Okken v. Okken, supra* at 269. Accordingly, we recognize that the function of this Court as to

---

**6.** Officer Meager demonstrated for the jury a number of maneuvers with the PR–24 baton, including three figure-eights, a reverse spin, two forward spins, a spin to the right, and a spin to the left. Also, Officer Meager demonstrated the maneuver used when he struck Mr. Fronk in the knee area.

In addition, expert testimony was introduced as to various maneuvers available with the PR–24 baton. Also, testimony was admitted pertaining to the propriety of the maneuver used in the instant case.

a motion for judgment notwithstanding the verdict is different from its function on a motion for a new trial. *See, Roberts v. Hail Unlimited, Div. of Intern. Bus.*, 358 N.W.2d 776, 779 (N.D.1984); *Nokota Feeds, Inc. v. State Bank of Lakota*, 210 N.W.2d 182, 187 (N.D.1973). Thus, we recognize in the instant case that the nature of Fronk's final issue on appeal requires this Court to utilize two separate standards of review.[7] *See, Okken v. Okken, supra* at 267; *Roberts v. Hail Unlimited, Div. of Intern. Bus., supra.*

■ In determining if a judgment notwithstanding the verdict should be granted, the trial court must employ a rigorous standard with a view toward preserving verdicts. *Riebe v. Riebe*, 252 N.W.2d 175, 177 (N.D.1977). The test is whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, is such that it leads to but one conclusion as to the verdict about which no reasonable person might differ. *Zajac v. Old Republic Ins. Co.*, 372 N.W.2d 897, 898 (N.D.1985); *Okken v. Okken, supra; Nokota Feeds, Inc. v. State Bank of Lakota, supra.* In employing this standard, the trial judge may not consider the weight of the evidence or judge the credibility of the witnesses but instead must accept the truth of the evidence presented by the party opposing the motion and the truth of all reasonable inferences from that evidence which support the jury verdict. *Zajac v. Old Republic Ins. Co., supra; Okken v. Okken, supra.* Therefore, if the evidence leads to one conclusion and that conclusion was not reached by the jury, then the denial of a judgment notwithstanding the verdict is not proper.

■ In order to determine whether or not the trial court erred in denying Fronk's

motion for judgment notwithstanding the verdict, we must examine the trial record and then apply the same standard that the trial court was required to apply initially. *See, Okken v. Okken, supra; Riebe v. Riebe, supra.* After applying that standard of review to the denial of Fronk's motion for judgment notwithstanding the verdict, we cannot conclude that reasonable men could reach but one conclusion in the instant case. Furthermore, after reviewing the evidence presented at trial in the light most favorable to the verdict, we believe that there was sufficient evidence presented to the jury to justify its finding that Officer Meager did not use unnecessary or unreasonable force in effecting the arrest of Mr. Fronk. Therefore, we conclude that the district court committed no error in denying Fronk's motion for judgment notwithstanding the verdict.

■ The standard for reviewing a ruling on a motion for a new trial is less rigorous than for a ruling on a motion for judgment notwithstanding the verdict. *Zajac v. Old Republic Ins. Co., supra* at 899; *Roberts v. Hail Unlimited, Div. of Intern. Bus., supra; see also,* 9 Wright & Miller, Federal Practice and Procedure § 2531. A motion for a new trial is addressed to the sound discretion of the trial court and its decision will not be reversed on appeal unless the trial court has manifestly abused its discretion. *Zajac v. Old Republic Ins. Co., supra; Benefiet v. Hoiby*, 370 N.W.2d 513, 516 (N.D.1985). An abuse of discretion has been defined as an unreasonable, arbitrary or unconscionable attitude on the part of the trial court. *Zajac v. Old Republic Ins. Co., supra; Cook v. Stenslie*, 251 N.W.2d 393, 396 (N.D.1977).

■ In the instant case, Fronk contends that the verdict was absolutely unsup-

7. As noted in the text, in *Okken v. Okken*, 325 N.W.2d 264, 269 (N.D.1982), this Court stated that the standard for reviewing a ruling on a motion for new trial is different than a ruling on a motion for judgment notwithstanding the verdict. In reviewing the propriety of the trial court's grant or denial of judgment notwith-

standing the verdict, the appellate court must apply the same standard that the trial court was to apply initially. *Okken, supra* at 267. The standard for reviewing a ruling on a motion for a new trial is whether the grant or denial was an abuse of discretion by the trial court. *Okken, supra* at 269.

ported by the evidence and therefore the trial court erred in denying the motion for a new trial.

In determining the sufficiency of the evidence to support the jury verdict, this Court must view the evidence in the light most favorable to the verdict. *Roberts v. Hail Unlimited, Div. of Intern. Bus., supra* at 780. As we indicated earlier, the denial of a motion for a new trial based upon insufficiency of the evidence will not be reversed on appeal unless the trial court manifestly abused its discretion. *Zajac v. Old Republic Ins. Co., supra; Roberts v. Hail Unlimited, Div. of Intern. Bus., supra.* Thus, this Court's review is limited to the determination of whether there is substantial evidence to sustain the verdict.

Our review of the evidence in the light most favorable to the verdict shows that Officer Meager pulled the Fronk vehicle over and had Mr. Fronk perform a number of field sobriety tests which he failed. Then, Officer Meager informed Mr. Fronk that he was under arrest. At that point, Officer Meager called for a back-up officer which suggested that the situation was of a serious nature. Also, Officer Meager requested that Mr. Fronk get into the back of the patrol car. Mr. Fronk refused and subsequently took a swing at Officer Meager. In response, Officer Meager struck Mr. Fronk in the knee area. Additional evidence showed that the following day Officer Meager consulted and was treated by a local chiropractor for a condition consistent with a traumatic blow to the left side of the head or neck. Furthermore, expert testimony was admitted which suggested that Officer Meager's action was not unnecessary or unreasonable under the circumstances.

Accordingly, we believe that there was substantial evidence produced at trial to sustain the verdict. Therefore, we conclude that the district court did not abuse its discretion in denying Fronk's motion for a new trial.

For the reasons stated in this opinion, we affirm.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.