Tom IRGENS and Judith A. Irgens,
Plaintiffs, Appellants, and
Cross–Appellees,

v.

MOBIL OIL CORPORATION, Successor
to the Superior Oil Company, Defen-
dant, Appellee, and Cross–Appellant.

Civ. No. 880278.

Supreme Court of North Dakota.

June 6, 1989.

Rolfstad, Winkjer, McKennett & Ste-
nehjem, P.C., Williston, for plaintiffs, ap-
pellants, and cross-appellees; argued by
Kent Reierson.

Bjella, Neff, Rathert, Wahl & Eiken,
P.C., Williston, for defendant, appellee, and

cross-appellant; argued by Dwight C. Eiken.

MESCHKE, Justice.

Tom and Judy Irgens appealed from an order granting a new trial to Mobil Oil Corporation on both liability and damages for failure to properly complete an oil well. Mobil cross-appealed from an order denying judgment notwithstanding the verdict. We affirm.

In December 1984, Mobil drilled an oil and gas well, known as the Johnson well, on Irgens' property in the NW¼ of Section 27–156–100, a part of the East Fork Field near Williston.[1] The well went down to a depth of about 9,400 feet. Initially, Mobil completed the well by simultaneously perforating two separate zones in the well, an upper zone at 9226–9235 feet and a lower zone at 9243–9249 feet. Mobil's engineers then used a light acid treatment on both zones to stimulate fluid entry into the well bore. When that treatment did not produce the desired results, Mobil took additional steps to complete the well.

One of Mobil's choices for completing the Johnson well was a hard acid treatment. This method was suggested by Jim Dahl, an independent completion engineer hired by Mobil to complete the Johnson well. This method would have been preferred by the Irgens. Instead, Mobil completed the well using a hydraulic fracture technique. This method entailed injecting a gel and sand into both zones to create "cracks" for better drainage into the well bore. After this hydraulic fracture, the Johnson well produced too much water and too little oil to be commercially feasible. After producing 5,796 barrels of oil and 33,949 barrels of water in eighteen months, the well was plugged and abandoned.

The Irgens sued Mobil. They claimed that Mobil had failed to act as a reasonable and prudent operator in completing the well. The Irgens sought damages for loss of production from the Johnson well and for diminution in value of their mineral interests in the NW¼ and the NE¼ of Section 27. Mobil insisted that it had acted reasonably, blaming the poor performance of the well on characteristics of the reservoir. A jury returned a verdict in favor of the Irgens and awarded Irgens damages of $506,000:

"(1) Loss of production to the Johnson Well or reduction in value, if any, to Plaintiffs' mineral interests in the NW¼ of 27. $500,000.00

"(2) Reduction in value, if any, to Plaintiffs' mineral interests to the NE¼ of 27. $6,000.00"

Mobil moved for a judgment notwithstanding the verdict or, alternatively, for a new trial. The trial court denied Mobil's motion for judgment notwithstanding the verdict, concluding that the evidence, viewed in the light most favorable to the Irgens, supported the jury's determination that Mobil had not acted as a reasonable and prudent operator in completing the well. However, the trial court granted Mobil's alternative motion for a new trial. The trial court concluded that the theory of reduction in value of the Irgens' mineral interests should not have been submitted to the jury because there was no evidence to support it. The trial court also determined that the verdict was approximately ten times the loss-of-production damages testified to by the Irgens' expert. Because it deemed the verdict excessive on both kinds of damages, the trial court granted Mobil a new trial. The Irgens appealed from the order granting a new trial. Mobil cross-appealed from the order denying its motion for judgment notwithstanding the verdict.[2]

## JUDGMENT NOTWITHSTANDING THE VERDICT

Mobil contended that, considering the interests of both lessors and lessees, the only

---

1. Superior Oil Company spudded in the Johnson well. During completion, Mobil acquired Superior.

2. Neither party questioned the reviewability of these orders absent a Rule 54(b) judgment. *See Grenz v. Kelsch,* 436 N.W.2d 552 (N.D.1989) [Meschke, J., concurring]. Although our decisions have not extended our recently reformulated finality doctrine to an order for a new trial, we have not yet ruled out that possibility. As yet, no one has made an appropriate motion to put the issue precisely before us. *See Grenz v. Kelsch, supra,* [Meschke, J., concurring].

conclusion that the evidence established was that it had acted as a reasonable and prudent operator in completing the Johnson well. Mobil argued that the characteristics of the reservoir, not its method of completing the well, caused the well to be a submarginal producer. The Irgens countered that the evidence, when viewed in the light most favorable to them, did not lead to only Mobil's conclusion. The Irgens argued that there was a reasonable difference of opinion about Mobil's conduct in completing the well and that the jury decided that Mobil did not act reasonably and prudently in completing the well. Therefore, the Irgens contended that the trial court properly denied Mobil's motion for judgment notwithstanding the verdict.

Judgment notwithstanding the verdict should be granted only if the evidence does not present a question of fact for the jury so that the moving party is entitled to judgment on the merits as a matter of law. *Okken v. Okken,* 325 N.W.2d 264 (N.D. 1982). When considering a motion for judgment notwithstanding the verdict, the trial court must determine whether the evidence, when viewed in the light most favorable to the verdict, leads to one conclusion about which there can be no reasonable difference of opinion. *Id.* The trial court is not free to weigh the evidence or to judge the credibility of witnesses, but must accept the truth of the evidence and all reasonable inferences from that evidence which supports the jury's verdict. *Id.* In reviewing the trial court's determination on a motion for judgment notwithstanding the verdict, we apply the same standard as the trial court. *Id.*

■ A lessee of an oil and gas lease has an implied obligation to the lessors to act as a reasonable and prudent operator in developing, operating, and protecting the property, with due regard for the interests of both lessors and lessees. *Johnson v. Hamill,* 392 N.W.2d 55 (N.D.1986); *Olson v. Schwartz,* 345 N.W.2d 33 (N.D.1984). Whether or not a lessee's development and operation of the property was reasonable and prudent is a question of fact. *Johnson v. Hamill, supra.*

■ In this case, the local company hired by Mobil to log the Johnson well recommended against perforating it in two separate zones. Instead, Mobil simultaneously perforated the two potentially productive zones. There was evidence that the two zones had substantially different water saturation and that there was a water-bearing zone close to the two perforated zones. There was evidence that after the initial light acid treatment, Mobil did not know which zone was yielding fluid.

Doug O'Neil, an expert petroleum engineer who testified for Irgens, evaluated Mobil's completion of the well. He testified that Mobil should not have simultaneously perforated two zones in this well because of the differences in the zones and because perforating more than one zone made it difficult to determine which zone was yielding fluid. O'Neil testified that, in order to maintain control of the well, the two zones should have been perforated and tested separately rather than together.

O'Neil testified that, once the two zones had been simultaneously perforated, a temporary diverting agent should have been used with the acid treatment to ensure that both zones were opened. O'Neil testified that the initial acid treatment used by Mobil was primarily for cleaning of drilling damage rather than for stimulation. O'Neil further testified that, typically, the hydraulic fracture technique used by Mobil was a last resort for stimulation of an oil-bearing zone near a water-bearing zone because once the water-bearing zone is invaded, the fracture cannot be repaired. O'Neil opined that a hard acid treatment should have been used before resorting to the hydraulic fracture technique.

Mobil's local completion engineer, Jim Dahl, also testified that he had suggested that Mobil first try a hard acid treatment to complete the well. There was also evidence that two offsetting, producing wells, the Irgens 1–27 on the SW¼ of Section 27–156–100 and the Irgens 3–27 on the SE¼ of Section 27–156–100, were both completed with a hard acid treatment. O'Neil opined that, taking the characteristics of this reservoir into consideration, Mobil had

not acted as a reasonable and prudent operator in completing the Johnson well.

Mobil presented contrasting opinion evidence that it had acted as a reasonable and prudent operator in completing the well and that the production performance of the well was the result of characteristics of the reservoir, rather than the method of completion. Viewed in the light most favorable to the Irgens, however, the evidence does not lead to one conclusion, favoring Mobil, about which there can be no reasonable difference of opinion. We therefore affirm the trial court's order denying Mobil's motion for judgment notwithstanding the verdict.

## NEW TRIAL

■ The Irgens contended that the trial court granted a new trial on a ground not raised in Mobil's motion for a new trial. Relying on *Fowler v. Delzer*, 177 N.W.2d 756 (N.D.1970), and *Gleson v. Thompson*, 154 N.W.2d 780 (N.D.1967), the Irgens argued that a motion for a new trial on the grounds of "insufficiency of the evidence" under Rule 59(b)(6), N.D.R.Civ.P., must specify how the evidence was insufficient. Irgens argued that because Mobil did not specify that there was no evidence concerning a reduction in value of the minerals, that ground for a new trial was waived, citing *Sucher v. Oliver–Mercer Electric*, 151 N.W.2d 321 (N.D.1967). In effect, the Irgens argued, the trial court granted a new trial on its own initiative without notice and an opportunity to be heard as required by Rule 59(i), N.D.R.Civ.P. The Irgens thus argued that the trial court abused its discretion in granting a new trial.

Mobil's motion for a new trial tracked the language of Rule 59(b)(5), N.D.R.Civ.P., stating that the "verdict of the jury as to damages [was] so grossly excessive and unreasonable under the evidence offered and received that it appears to have been given under the influence of passion or prejudice." Under Rule 59(b)(5), N.D.R. Civ.P., the trial court must consider and weigh the evidence to determine whether a jury award is so excessive as to be without

evidentiary support. *E.g.*, Cook v. Stenslie, *251 N.W.2d 393 (N.D.1977)*.

The trial court stated that "[a]rguably, the record as a whole, including not only the opinion of Douglas O'Neil, but also the evidence of production of surrounding wells, supports the jury's decision" on loss of production from the Johnson well. However, the trial court recognized a "singular troubling aspect" of the submission of two "theories" of damages to the jury: (1) the loss of production from the Johnson well, and (2) the reduction in the value of mineral interests in the NW¼ and NE¼ of Section 27. The trial court specifically concluded:

"In summary, it is impossible to determine whether the jury computed damages based on a decline in production of the Johnson Well or on a diminution in the value of the mineral acres. If it is the latter, there is an insufficiency of evidence to support the verdict. The fact that the jury did find a reduction in value of minerals in the NE/4 of 27 suggests that the jury may have found a similar conclusion with respect to the NW/4 of 27. The conclusion is further supported by reason of the fact that the verdict is approximately ten times the loss of production damages testified to by Plaintiffs' own expert."

The trial court thus decided that, on both kinds of damage, the verdict was so excessive as to be without support in the evidence, a ground for new trial under Rule 59(b)(5), N.D.R.Civ.P. Because of this import of the trial court's decision and because the motion for new trial specified grounds under Rule 59(b)(5), we read the trial court's decision as relying on Rule 59(b)(5). *Regan Farmers Union Co-op. v. Swenson*, 253 N.W.2d 327 (N.D.1977). We conclude that the trial court did not use a ground not specified in Mobil's motion or grant a new trial on its own initiative. *Compare* Rule 59(g), N.D.R.Civ.P. Therefore, we conclude that the trial court did not abuse its discretion in this respect.

The Irgens also contended that the trial court erred in granting a new trial based upon a verdict form requested by Mobil.

At first, the trial court proposed a verdict form separating the two kinds of damage:

"(1) Loss of production to the Johnson Well   $_____

"(2) Damages, if any, to Plaintiffs' mineral interests   $_____"

Mobil thereafter asked for a change in the verdict form to avoid a double recovery. The trial court submitted a verdict form to the jury identifying both kinds of damage in an interrogatory calling for a single answer.

Generally, a party may not challenge a jury instruction which that party requested. *E.g., Wilson v. General Motors Corp.,* 311 N.W.2d 10 (N.D.1981). To the extent that the trial court used an erroneous verdict form requested by Mobil to rationalize its decision, the error was waived. But, even though "troubled" about having permitted the jury to award damages for both loss of production and reduction in value, the trial court determined that the jury's verdict was not supported by the evidence on either kind of damage. We therefore assess the principal issue: Did the trial court abuse its discretion in granting a new trial because the jury's verdict was excessive?

In *Okken v. Okken, supra,* 325 N.W.2d at 269, we outlined the trial court's standard for assessing a motion for a new trial:

"If, on the other hand, the motion is for a new trial, the trial judge has a certain amount of discretion in viewing the evidence. Here, the trial court may, within limits, weigh the evidence and judge the credibility of witnesses.... In particular, when a motion for a new trial is made and the reason given in support of the motion is that there was insufficient evidence to justify the verdict, the moving party is asking the trial court to decide whether or not the verdict is against the weight of the evidence. And in making this decision, the trial judge must weigh the evidence ...; he must consider that evidence which supports the verdict equally with that evidence which challenges the verdict. In short, when ruling on a motion for a new trial, the trial judge may consider *all* the evidence...." [Citations omitted.]

The trial court may weigh the evidence, within limits, but the trial court may not act as a thirteenth juror and substitute its judgment for that of the jury. *Grenz v. Kelsch,* 436 N.W.2d 552 (N.D.1989).

■ A motion for a new trial is addressed to the sound discretion of the trial court, and its decision to grant a new trial will not be disturbed on appeal unless there was an abuse of discretion. *Okken v. Okken, supra.* We have defined an abuse of discretion as arbitrary, capricious, or unreasonable action. *Id.* Since the granting of a new trial does not end the case, we require a stronger showing of abuse of discretion to reverse an order granting a new trial than to reverse a denial of a new trial. *Id.*

■ Within this framework of review, we turn to the evidence about both kinds of damages sought by the Irgens, for loss of production and for reduction in mineral values. Mobil asserted that, although there was evidence of $52,233 for loss of production and of $176,000 for reduction in value, the $506,000 verdict vastly exceeded that evidence. The Irgens did not dispute Mobil's calculation of $176,000 for reduction in value of royalty acres. Instead, they argued that the value of a mineral interest is equal to the present value of the anticipated production revenue. Thus, they argued, if the evidence supported a loss of production with a present value of $500,000, the evidence also supported an equal reduction of their mineral values. The Irgens also relied on the trial court's statement that "[a]rguably, the record as a whole, including not only the opinion of Douglas O'Neil, but also the evidence of production of surrounding wells, supports the jury's decision." In sum, the Irgens contended that, since the evidence supported the jury verdict, the trial court abused its discretion in granting a new trial.

We agree that reduced production of a well may be one factor affecting diminution of market value of the surrounding mineral interests. *See Jim's Hot Shot Ser-*

*vice, Inc. v. Continental Western Ins. Co.,* 353 N.W.2d 279 (N.D.1984). Nevertheless, we must consider whether there was sufficient evidence of loss of production to support the jury verdict.

The Irgens' expert, O'Neil, testified that the present value of lost revenue from the Johnson well was $52,233. O'Neil's revenue projection was based on swabbing tests after the light acid treatment, which indicated that the well would produce 24 barrels of oil per day, and on Mobil's estimate that 15% of the 434,000 barrels of oil in place around the well, or 65,100 barrels, was recoverable. O'Neil further testified that, with a different completion method, well production could have been "maybe a hundred barrels a day, maybe two hundred. I don't know." O'Neil also testified that doubled production from the well would have resulted in twice his $52,233 projection for the present value of lost production.

The Irgens also introduced evidence that the average initial production of eleven other wells near the Johnson well was 272 barrels per day, more than ten times the initial production for the Johnson well. However, there was substantial evidence that this field was known for inconsistency and unpredictability in its underlying reservoir and that there were significant differences in permeability and porosity in relatively short distances throughout this field. Evidence showed that, compared to the surrounding wells, the potentially productive zones in this well were "tight," with lower porosity and permeability.

In our view, the evidence about a greater loss of production than $52,233 was extremely speculative. Moreover, the trial court viewed the evidence about reduction in value of the Irgens' mineral interests, approximating $176,000, as weak. In any event, that evidence of value was well below the jury's verdict. The trial court was within its range of discretion in ruling that an award of $500,000 was excessive. We do not believe the trial court acted arbitrarily, capriciously, or unreasonably.[3]

 The trial court did not explain its reason for granting a new trial on liability, as well as damages. *See Cook v. Stenslie,* 251 N.W.2d 393 (N.D.1977). Evidence at the trial indicated that production from an oil well depends upon the interrelationship of the reservoir's characteristics and the well's completion. While there was strong evidence of Mobil's liability in negligently completing the well, this interrelationship with the reservoir's characteristics intertwined the issue of damages with liability. Therefore, we conclude that a new trial on both issues was appropriately ordered.

The order denying Mobil's motion for judgment notwithstanding the verdict is affirmed. The order granting a new trial is affirmed.

---

3. The Irgens also asserted that the trial court "abused its discretion by waiting six and one-half months after trial to determine, without the benefit of a trial transcript, that there was insufficient evidence to support giving an instruction on the reduction in the value of the minerals." The Irgens argued that it was "unreasonable for the Trial Court to wait so long that it forgot substantial evidence." However, Mobil's motion was based upon the "minutes of the Court, and a partial transcript of the proceedings." *See* Rule 59(d), N.D.R.Civ.P. There is nothing to indicate that the trial court forgot substantial evidence. The Irgens' argument is unpersuasive.